UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AASIR AZZARMI,

                      Plaintiff,

     v.

DONALD NEUBAUER, *et al.*,

                     Defendants.

No. 20-CV-9155 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Aasir Azzarmi
Inglewood, CA
*Pro Se Plaintiff*

Frank J. Wenick, Esq.
Carmine J. Carolei, Esq.
Deborah A. Del Sordo, Esq.
Ahmuty, Demers & McManus
Albertson, NY; New York, NY
*Counsel for Defendants Donald Neubauer and CoventBridge Group (USA)*

Glenn A. Kaminska, Esq.
Mauro, Lilling, Naparty
Woodbury, NY
*Counsel for Defendants Donald Neubauer and CoventBridge Group (USA)*

Peter T. Shapiro, Esq.
Lewis Brisbois Bisgaard & Smith LLP
New York, NY
*Counsel for Defendants Sedgwick Claims Management Services, Inc. and Sedgwick SIU, Inc.*

Joseph A. Oliva, Esq.
Richard J. Femia, Esq.
Goldberg Segalla LLP
Garden City, NY; New York, NY
*Counsel for Defendant QBE North America*

KENNETH M. KARAS, United States District Judge:

Aasir Azzarmi ("Plaintiff" or "Azzarmi") brings this Action pro se against Donald Neubauer ("Neubauer"), CoventBridge Group (USA) ("CoventBridge"), Sedgwick Claims Management Services, Inc. ("Sedgwick CMS"), Sedgwick SIU, Inc. ("Sedgwick SIU"; with Sedgwick CMS, "Sedgwick"), QBE North America ("QBE"), the Delta Family Care Disability and Survivorship Plan (the "Plan"), and Dane Street LLC ("Dane Street"; collectively, "Defendants").  (*See generally* Third Amended Compl. ("TAC") (Dkt No. 106).)[1]  In the TAC, Plaintiff raises myriad claims against Defendants arising under federal and state law.  (*See generally id.*)

Before the Court are three Motions To Dismiss the TAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6)—the Motion filed by Sedgwick (the "Sedgwick Motion"), (*see* Sedgwick Not. of Mot. (Dkt. No. 109)), the Motion filed by QBE (the "QBE Motion"), (*see* QBE Not. of Mot. (Dkt. No. 110)), and the Motion filed by Neubauer and CoventBridge (the "Neubauer Motion"), (*see* Neubauer Not. of Mot. (Dkt. No. 115)).  For the reasons that follow, the Motions are granted in part and denied in part.

## I.  Background

### A.  Materials Considered

Plaintiff attached a number of exhibits to the TAC.  (*See* TAC 24–58.)  In addition, Plaintiff added additional factual allegations in the Opposition to the instant Motion, and appended a thirty-page Declaration—which sets forth even more previously unpled facts—to that document as well.  (*See generally* Pl's Opp'n to Mots. ("Pl's Opp'n") (Dkt. No. 118); *see*

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

Separately, the Court notes that, although the Plan and Dane Street were added to this Action through the TAC, they do not appear to have been served.  (*See generally* Dkt.)

2

*also id.* at 134–64 (Plaintiff's Declaration).)  Thus, as a threshold matter, the Court must consider

what documents and allegations it may consider in deciding the instant Motions.

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the

pleadings themselves," because "[t]o go beyond the allegations in the [c]omplaint would convert

the Rule 12(b)(6) motion into one for summary judgment pursuant to [Federal Rule of Civil

Procedure] 56."  *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275

(S.D.N.Y. 2002).  "Nevertheless, the Court's consideration of documents attached to, or

incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken,

would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v.

Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions

to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into

the complaint by reference, and matters of which a court may take judicial notice" (quotation

marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a

Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents

attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial

notice may be taken.'" (alteration adopted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d

12, 15 (2d Cir. 1993))).

Here, because Plaintiff has attached various documents to the TAC itself, the Court will

consider them in deciding the instant Motions.  *Thomas*, 232 F. Supp. 2d at 275; *see also Crosby

v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 561 (S.D.N.Y. 2023) (considering three

exhibits that were attached to a complaint in connection with deciding a motion to dismiss).

Beyond the foregoing, when reviewing a complaint submitted by a pro se plaintiff, the

Court *generally* may consider "materials outside the complaint to the extent that they are

consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "[the plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997), "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

However—based on their particular circumstances—there are limits to the solicitude to which pro se litigants are entitled. Specifically, serial pro se litigants may properly be "charge[d] . . . with the responsibilities accompanying [their] manifest experience with civil litigation." *Sledge v. Kooi*, 564 F.3d 105, 109 (2d Cir. 2009); *see also Patel v. Patel*, No. 23-CV-8765, 2024 WL 37094, at *4 (S.D.N.Y. Jan. 3, 2024) (finding that the plaintiff, a "frequent litigator" was "not entitled to the solicitude generally afforded to pro se litigants" (italics omitted)); *Uppal v. W. Express, Inc.*, No. 15-CV-9976, 2019 WL 2450794, at *10 (S.D.N.Y. Feb. 27, 2019) (noting that the plaintiff, "[a]s a serial litigator" did "not enjoy the same solicitude as would a pro se party litigating in good faith and with limited legal experience" (italics omitted)), *report and recommendation adopted*, 2019 WL 1434234 (S.D.N.Y. Apr. 1, 2019). As it relates to this case, there is no question that Plaintiff has a *vast* amount of civil litigation experience in federal court, at least at the pleadings stage. (*See* Order of Dismissal 11 (noting Plaintiff's "extensive history of litigating claims across the country, including with exceptionally dense tomes for pleadings

and motions" (citation omitted)) (Dkt. No. 89).)  Chief Judge Swain's discussion of Plaintiff's

litigation history in a remarkably similar case is instructive here:

> Public Access to Court Electronic Records (PACER) shows Azzarmi's extensive
> litigation history in various courts arising from [Plaintiff's] Delta employment.  A
> number of those lawsuits were filed against the same defendants named in the
> amended complaint filed in this case, including Sedgwick, Delta, QBE, and
> William Ittounas.  Courts have dismissed Azzarmi's prior complaints on res
> judicata grounds, for failing to comply with Federal Rule of Civil Procedure 8, for
> failing to comply with court orders, and for failing to state a claim under Section
> 1981 and the RICO statute.  *See Azzarmi v. Sedgwick Claims Management Systems,*
> *Inc.*[,] No. 21-CV-10074 (E.D. Mich. Jan[.] 11, 2021) (dismissing for failure to
> state a claim RICO complaint against Sedgwick and QBE, among others), 21-1185
> (6th Cir. Nov. 9, 2021) (affirming dismissal of "inadequately pleaded complaint"
> and denial of reconsideration and leave to amend); *Azzarmi v. Donnelly*, No. 21-
> CV-[]12 (E.D.N.Y. Jan. 4, 2021) (dismissing for failure to state a claim and on
> immunity grounds complaint against Eastern District judge arising from her rulings
> in Azzarmi's cases), 21-803 (2d Cir. Oct. 26, 2021) (dismissing appeal as
> frivolous); [*Azzarmi v. Catania*], [No.] []20-CV-4712, 59. . . (S.D.N.Y. Oct. 28,
> 2021) (dismissing with prejudice defamation complaint for improper venue and
> failure to comply with court orders, and noting that while "the Court has afforded
> Plaintiff significant leeway in view of [Plaintiff's] pro se status, [Plaintiff's]
> practice of serially filing untimely, meritless motions ends now."); *Azzarmi v.*
> *USDC CALA*, [No.] 20-71583 (9th Cir. June 25, 2020) (denying Azzarmi's
> application because [Azzarmi] had "not demonstrated that this case warrants the
> intervention of the court by means of the extraordinary remedy of mandamus[]");
> *Pimental v. Delta Air Lines, Inc.*, No. 17-CV-5317 (E.D.N.Y[.], July 16, 2019)
> (dismissing employment discrimination complaint with prejudice under [Federal
> Rule of Civil Procedure] 41(b) for failure to comply with court orders and for using
> abusive language toward judges); *Pimental v. Delta Airlines*, No. 18-CV-2999
> (E.D.N.Y. July 31, 2019) (dismissing with prejudice removal action against, inter
> alia, Delta, Sedgwick, and Ittounas, in light of Azzarmi's "egregious" behavior"),
> aff'd, 19-2343, 19-2376, 19-2499, 19-2510 (2d Cir. Oct. 27, 2020); *Azzarmi v.*
> *Ricotta & Marks*, [No.] []19-CV-4437, 5 . . . (S.D.N.Y. Oct. 28, 2021) (dismissing
> for lack of subject matter jurisdiction complaint asserting state law claims against
> attorneys who represented Azzarmi in litigation against Delta), [No.] 19-2343 (2d
> Cir. May 5, 2020) (dismissing appeal as frivolous).

*Davis v. Sedgwick Claims Mgmt. Servs.* (*Davis I*), No. 21-CV-7090, 2022 WL 153251, at *5

(S.D.N.Y. Jan. 18, 2022).  (*See also* Order of Dismissal 11–12 (setting forth Plaintiff's extensive

litigation history in district courts throughout the country and noting that Plaintiff was named a

"vexatious litigant" in the Central District of California (citing *Azzarmi v. Wurtz*, No. 20-CV-

607, 2020 WL 3106343, at *1, 6 (C.D. Cal. May 21, 2020), *reconsideration denied*, 2020 WL

5440353 (C.D. Cal. July 15, 2020), *aff'd*, 854 F. App'x 893 (9th Cir. 2021)).)[2]  In fact, it bears

noting that, just last year, Chief Judge Swain issued an order *barring* Plaintiff from filing future

civil actions in forma pauperis in this District without first obtaining court leave.  (*See* Bar Order

Under 28 U.S.C. § 1651 (Dkt. No. 12, 23-CV-3620 Dkt.); *see also id.* at 1 (noting Plaintiff's

"history of engaging in vexatious litigation").)

      Importantly, "the exact degree of solicitude that should be afforded to a pro se litigant in

any given case depends upon a variety of factors, including the procedural context and relevant

characteristics of the particular litigant." *Davis I*, 2022 WL 153251, at *4 (citing *Tracy v.

Freshwater*, 623 F.3d 90, 100–03 (2d Cir. 2010)); *see also Tracy*, 623 F.3d at 102 ("[T]he degree

of solicitude may be lessened where the particular pro se litigant is experienced in litigation and

familiar with the procedural setting presented" (italics omitted)).  Indeed, a general *withdrawal*

of solicitude may be appropriate where there has been "a strong showing that a pro se litigant has

acquired adequate experience more generally, so as to render special solicitude unnecessary and

potentially inappropriate." *Sledge*, 564 F.3d at 109; *see also Tracy*, 623 F.3d at 102–03 (noting

that "district courts should exercise their discretion . . . to determine based on the totality of the

relevant circumstances when the ordinary [solicitous] approach is not appropriate and what

degree of solicitude, if any, should be afforded" to a pro se litigant, "subject to review for . . .

abuse").

      Here the Court has little trouble concluding that—for purposes of resolving the instant

Motions only—Plaintiff merits a withdrawal of the solicitude generally afforded to pro se

---

[2] As the Court has already noted in this Action, Plaintiff has previously gone by the name "Nicholas Pimentel."  (*See* Order 3 n.1 (Dkt. No. 10).)

litigants. As noted above, Plaintiff has a great deal of experience litigating in federal court,
especially in the context of motions to dismiss. *Davis I*, 2022 WL 153251, at *5; *see generally*
*Davis v. Sedgwick Claims Mgmt. Servs. Inc.* (*Davis II*), No. 21-CV-7090, 2023 WL 6150009, at
*13–18 (S.D.N.Y. Aug. 30, 2023) (reflecting Plaintiff's experience at the motion-to-dismiss
stage), *report and recommendation adopted*, 2023 WL 6141170 (S.D.N.Y. Sept. 20, 2023);
*Azzarmi v. Key Food Stores Co-Operative Inc.*, No. 20-CV-6835, 2021 WL 8013811 (S.D.N.Y.
Dec. 28, 2021) (same), *report and recommendation adopted*, 2022 WL 884973 (S.D.N.Y. Mar.
25, 2022); *Wurtz*, 2020 WL 3106343, at *2–4 (same). (*See also generally* Order of Dismissal
(same).) Further, the Court emphasizes that "a court's 'special solicitude' towards pro se
litigants 'does not extend to the willful, obstinate refusal to play by the basic rules of the system
upon whose very power the plaintiff[s] [are] calling to vindicate their rights.'" *Lipin v Hunt*, 573
F. Supp. 2d 836, 845 (S.D.N.Y. 2008) (italics omitted) (quoting *Pandozy v. Segan*, 518 F. Supp.
2d 550, 558 (S.D.N.Y. 2007)). And here, Plaintiff has already been put on notice—multiple
times—of the generally uncontroversial requirement that litigants must comply with courts'
individual rules. (*See* Order of Dismissal 3 (noting that the Court had warned Plaintiff that
Plaintiff failed to comply with the Court's Individual Rules of Practice and that it previously
warned Plaintiff of a similar failure in a prior, related action); *see also id.* at 12 (stating that
Plaintiff's non-compliance with applicable procedural rules "ends now" (citation omitted).)
Nevertheless—in plain contravention to this Court's Individual Rules—Plaintiff's Opposition to
the instant Motions runs *133* pages long, and, moreover, it is drafted in very small font and is
single-spaced. (*See generally* Pl's Opp'n.) *See also* Indiv. Rule § II.B ("Memoranda of law in
support of and in opposition to motions are limited to [twenty-five] pages[.] All memoranda of
law shall be produced in a 12-point font, be double-spaced, and have one-inch margins on all

7

sides.").[3]  Finally, the Court granted Plaintiff leave to file the TAC with the understanding that it would be "either [twenty] pages in length or . . . utilize[] the SDNY pro se form for discrimination."  (Op. & Order 4 (quotation marks omitted) (noting Plaintiff's representation to the Court) (Dkt. No. 101).)  Although Plaintiff did use the pro se form complaint and the TAC was technically only twenty-three pages long (not including exhibits), Plaintiff unquestionably violated the spirit of Plaintiff's representation to the Court, given that the font size and spacing used on the TAC's "attached pages" is so small that, in reality, it is far longer than the total number of pages suggests.  (*See* TAC 7–22.)

This ends now.  While the Court considered the entirety of Plaintiff's non-compliant pleadings and submissions in connection with pending motions, in the future, Plaintiff is on notice that the Court will not tolerate such behavior.  Any submission that fails to be in full compliance with the Court's Individual Practices will not be considered.  That means, for example, that any submission that does not have the required font will not be read at all.  And, the Court will not read any part of any submission that exceeds any applicable page maximums.  Moreover, Plaintiff is put on notice that any pleadings must contain allegations that are made in good faith, that is that they have a factual basis and are not frivolous.  Failure to do so could result in sanctions.  *See, e.g.*, *Papadimitriou v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 22-

---

[3] Indeed, it seems Plaintiff was conscious of the fact that the Opposition flouted this Court's Individual Rules, and even took the opportunity to question the Court's ability to be objective in connection with this case.  (*See* Pl's Opp'n 3 ("Defendants and Judge Karas can't complain that this brief is long because Defendants asked for more specific facts and Plaintiff has at least 150 pages in total to respond to [six] Defendants, Motions [T]o Dismiss, and number of claims Plaintiff needs to respond to.  Defendants ongoing violations have occurred over several years and continue occurring.  Judge Karas voluntarily and improperly maneuvered himself onto this case (disturbing Plaintiff's choice of venue and over Plaintiff's objective bias objections), or rather 'hijacked' this case, so Judge Karas obviously is quite personally interested in this case.").)

CV-2065, 2023 WL 6385769, at *5 (E.D.N.Y. Sept. 29, 2023) (explaining that "a court may order a pro se litigant to pay legal fees," so long as the court "adequately warn[s] the pro se litigant"); *Ginther v. Provident Life & Cas. Ins. Co.*, No. 05-CV-248, 2007 WL 925751, at *4 (W.D.N.Y. Mar. 26, 2007) (imposing sanctions on an experienced pro se plaintiff by requiring him to pay certain of the defendants costs and attorneys' fees—including those incurred in connection with their sanctions motion—even after a state court had sanctioned the plaintiff by imposing a $5,000 fine, where the plaintiff's filings were "patently frivolous" and a "barely veiled attempt to reargue, not only the current case, but [a] previous lawsuit as well"), *aff'd*, 350 F. App'x 494 (2d Cir. 2009) (summary order); *Golub v. Univ. of Chicago*, No. 87-CV-2891, 1992 WL 333641, at *4 (E.D.N.Y. Oct. 26, 1992) (sanctioning a pro se litigant by imposing a $3,000 fine upon him after repeatedly warning him of the consequences of frivolous filings).

In sum, in light of Plaintiff's litigation experience at the motion-to-dismiss stage, as well as Plaintiff's behavior before this Court and many other courts across the country, the Court—in the exercise of its discretion—concludes that Plaintiff is not entitled to solicitude here, and will therefore treat Plaintiff like any other litigant. *See Sledge*, 564 F.3d at 109 (recommending that, "when a court considers whether to withdraw a pro se litigant's special status, it should consider not only that litigant's lifetime participation in all forms of civil litigation, but also his experience with the particular procedural setting presented" (italics omitted)); *see also Tracy*, 623 F.3d at 102–03 (explaining that, when considering "what degree of solicitude, if any, should be afforded" to a pro se litigant, courts should base their decision on "the totality of the relevant circumstances"). The primary upshot of the Court's conclusion is that the Court will not consider the many facts asserted in the Opposition or Plaintiff's unauthorized declaration, nor will it interpret the TAC "to raise the strongest arguments that [it] suggest[s,]" as it would for a

typical pro se plaintiff. *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013); *see also Cortese v. Skanska Koch, Inc.*, No. 20-CV-1632, 2021 WL 429971, at *18 n.4 (S.D.N.Y. Feb. 8, 2021) (explaining that a plaintiff "cannot amend [their] complaint through a brief"); *Peffers v. Stop & Shop Supermarket Co. LLC*, No. 14-CV-3747, 2015 WL 5460203, at *1 n.2 (S.D.N.Y. June 9, 2015) ("[I]t is generally improper to consider [a plaintiff's] affidavits in ruling on a motion to dismiss.") (citation omitted)); *Trustees of Empire State Carpenters Annuity, Apprenticeship v. Syracuse Floor Sys., Inc.*, No. 13-CV-1509, 2013 WL 7390601, at *3 (E.D.N.Y. Dec. 16, 2013) (Report & Recommendation) (declining to consider a declaration submitted in support of a motion to dismiss because it was "not incorporated in the complaint by reference, [was] not a document upon which the plaintiffs solely relied in bringing th[at] action and integral to the [c]omplaint, and [was] not a matter of public record, but rather concerns matters outside the pleadings"); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that a plaintiff may not amend their complaint through its opposition brief).

### B. Factual Background

The following facts are drawn from the TAC and the exhibits attached thereto. The facts alleged are assumed true for the purpose of resolving the instant Motions. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023). However, given that the TAC contains numerous legal conclusions, (*see, e.g.*, TAC ¶ 8 ("All Defendants aided and abetted each other in committing medical fraud against Plaintiff and/or violating 42 [U.S.C. §§] 1981 & 1983 . . . to violate Plaintiff[']s constitutional rights, depriving Plaintiff of money and property, and subjecting Plaintiff to cruel and unusual punishment for exercise First Amendment rights.")), the Court emphasizes at the outset that it need not—and will not—accept such conclusions as true, *Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 219 (S.D.N.Y. 2022) ("Even in the pro se context, the Court is not bound to accept 'conclusory allegations or legal conclusions

masquerading as factual conclusions.'" (italics omitted) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008))).[4]

### 1. The Parties

Plaintiff—a resident of California[5]—is a practicing Muslim who identifies as Hispanic. (*See* TAC ¶¶ 16, 29.)  During the relevant time period, Plaintiff worked as a flight attendant for Delta Airlines ("Delta").  (*Id.* ¶¶ 13, 31.)[6]

As alleged, Sedgwick and QBE handled Workers' Compensation matters involving Delta employees.  (*Id.* ¶ 11.)

Exhibit 1 to the TAC makes clear that CoventBridge—through its investigator Neubauer—conducted an investigation in 2018 on behalf of Sedgwick SIU relating to Plaintiff's claim, which Sedgwick was assessing.  (*See* TAC Ex. 1.)  Although Plaintiff previously asserted that Neubauer was employed by CoventBridge as an investigator, (*see* Second Am. Compl. ("SAC") ¶ 2(B) (Dkt. No. 34); First Am. Compl. ("FAC") ¶ 2(B) (Dkt. No. 6)), Plaintiff now—

---

[4] Although the TAC is far from a model of clarity, the Court has closely reviewed it to present as cohesive a narrative as possible herein.

[5] The Court notes that Plaintiff's address, 10217 S. Inglewood Ave., Inglewood, CA 90304, is associated with the Catholic Charities of Los Angeles St. Margaret's Center, *see* Google Maps, https://maps.google.com (search 10217 S. Inglewood Ave., Inglewood, CA 90304); *see also McHale v. Chase Home Fin. LLC*, No. 17-CV-6089, 2020 WL 7711826, at *4 (E.D.N.Y. Dec. 29, 2020) (taking judicial notice of a location found via Google Maps). Although it is unclear whether St. Margaret's Center provides lodging or shelter services, the Court notes that—coupled with Plaintiff's unquestionable chicanery in connection with litigating this case—Plaintiff's use of this address raises the specter that Plaintiff is seeking to manufacture diversity.  *Cf. Davis II*, 2023 WL 6150009, at *2 (noting—in a case brought by a former Delta flight attendant against Sedgwick CMS that Plaintiff sought to join—that the plaintiff there had suspiciously changed her address from California to Florida in an effort to take advantage of a more favorable statute of limitations that "smack[ed] of litigation gamesmanship").

[6] Because Plaintiff does not allege Plaintiff's gender in the TAC, the Court will simply refer to Plaintiff as "Plaintiff" herein.

for the first time—asserts that Neubauer is "an alleged NYC detective/police officer," (TAC ¶ 37).

### 2. Events in 2017 & 2018

In January 2017, Plaintiff was injured on the job.  (TAC ¶ 13.)  Plaintiff avers that, from as early as January 2017, Sedgwick was responsible for approving or denying Plaintiff's "workers['] compensation leave of absence."  (*Id.* ¶ 15.)  Plaintiff also asserts that in approximately April 2017 through June 2017, a Sedgwick employee informed Plaintiff that because Plaintiff is Hispanic, Sedgwick believed Plaintiff was committing insurance fraud.  (*Id.* ¶ 16; *see also id.* ¶ 26 (alleging that at least one Sedgwick employee continued using racial slurs when referring to Plaintiff and suggesting that Plaintiff was engaging in Workers' Compensation fraud and was "lazy and [didn't] want to work" because Plaintiff is Hispanic).)  In addition, Plaintiff alleges that a non-Hispanic Sedgwick employee referred to Hispanic individuals using racial epithets when speaking with Plaintiff.  (*Id.* ¶ 17.)

In connection with Plaintiff's Workers' Compensation claims, the same Sedgwick employee who used racist language also told Plaintiff in approximately June 2017 that Plaintiff's various healthcare-related claims—including Workers' Compensation—"were all denied 'because Sedgwick's surgeon, Dr. Panos (Spyros), who reviewed your claims and medical files, had determined that you do not have any injuries or disabilities that require any medical treatment or any time off from work.'"  (*Id.* ¶ 32; *see also id.* ¶ 16 (referring to Panos as an "unlicensed doctor").)[7]

---

[7] Plaintiff generally alleges that Sedgwick CMS, Dane Street, and QBE have a practice of using unlicensed and/or unqualified "doctors" who deny meritorious claims for treatment and benefits.  (*See* TAC ¶¶ 77, 81.)

In August 2017, Plaintiff's manager at Delta "threatened and/or informed" Plaintiff by phone that Plaintiff needed to return to work by January 2018, i.e., by one year after Plaintiff's workplace injury. (*Id.* ¶ 18.) Plaintiff asserts that, ultimately, Sedgwick denied Plaintiff's Workers' Compensation "medical treatment and/or . . . leave[s] of absence with pay and/or any or all disability leaves of absence[,]" and that this continued up until February 2018. (*Id.* ¶¶ 17, 19.) As alleged, Delta has a "formal and/or official and/or unofficial and/or informal policy" where employees who do not return to work within a year of suffering a workplace injury or being on disability leave are subject to termination. (*Id.* ¶ 14.) Thus, Delta terminated Plaintiff's employment in light of Plaintiff's many "unapproved absences." (*Id.* ¶¶ 19–20, 25.)

Notably, Plaintiff asserts that Plaintiff informed the New York State Workers' Compensation Board ("WCB") of Sedgwick's alleged racial discrimination in August 2017. (*Id.* ¶ 21.) Plaintiff also asserts that Plaintiff filed an employment lawsuit in September 2017 against Delta. (*Id.* ¶ 34.) Following these events, Plaintiff avers that the same Sedgwick employee who used racist language threatened Plaintiff multiple times from September 2017 to May 2018 to drop the WCB case and the lawsuit in exchange for $10,000 or else Sedgwick would have "its[] NYC cops do a criminal investigation to prosecute you criminally for fraud." (*Id.* ¶ 35.) In response, Plaintiff explained that such a settlement would violate Plaintiff's convictions as a practicing Muslim. (*Id.* ¶ 36.) Because Plaintiff refused to accept the $10,000 settlement, Plaintiff asserts that Sedgwick and CoventBridge paid Neubauer an undisclosed sum to launch an "official criminal fraud investigation against Plaintiff [and] to 'push for a fraud charge." (*Id.* ¶ 37.)

### 3. Events in 2019

In the TAC, Plaintiff alleges for the first time that, in February 2019—over eighteen months before Plaintiff initiated this Action, (*see* Compl. (Dkt. No. 3))—Neubauer, disguised in

13

"a hat and [wearing] sunglasses at night," told Plaintiff he was an undercover police officer, displayed a police badge, and "began asking Plaintiff if Plaintiff was Muslim and if Plaintiff's religious beliefs were the only reason Plaintiff was refusing to settle these [two] cases with Sedgwick[,]" (TAC ¶ 38).  After Plaintiff confirmed that Plaintiff's religious convictions were, in fact, behind Plaintiff's refusal to settle, Neubauer shoved Plaintiff against a wall while using racial slurs and attempted to put Plaintiff in handcuffs.  (*Id.*)  As alleged, Neubauer kicked Plaintiff's "ankle, legs,[]& back of Plaintiff's knees" repeatedly, tackled Plaintiff to the ground, put Plaintiff in a chokehold, and threatened Plaintiff with a gun.  (*Id.*)  Upon searching Plaintiff, Neubauer is alleged to have taken $200.00 from Plaintiff.  (*Id.*)  During this altercation Plaintiff asserts that Neubauer told Plaintiff that if Plaintiff did not voluntarily dismiss the employment lawsuit and settle the WCB case, Plaintiff would be incarcerated and prosecuted for fraud.  (*Id.*)  Plaintiff agreed to comply, so Neubauer released Plaintiff.  (*Id.*)

Plaintiff alleges that Plaintiff sought to voluntarily dismiss the employment lawsuit against Delta, but the court "completely ignored" the application, so Plaintiff began "violating several of the judge's orders and making inappropriate comments to expedite quick dismissal," such that, by July 2019, the lawsuit was dismissed.  (*Id.* ¶¶ 39–41.)

On approximately July 25, 2019, Neubauer allegedly approached Plaintiff again, showed his badge, introduced himself "as a[n] NYC detective/cop" and again threatened Plaintiff to drop the WCB case and to refrain from testifying at a WCB hearing, or else face arrest.  (*Id.* ¶ 42.)  Given that it was against Plaintiff's religious beliefs to settle the WCB case, Plaintiff alleges that Neubauer "took adverse action against Plaintiff on around July 25, 2019" by perjuring himself, giving "third party hearsay testimony," and "maliciously prosecut[ing] Plaintiff by testifying to [a] WCB judge that Plaintiff committed criminal acts of fraud."  (*Id.* ¶ 43.)

Notwithstanding Plaintiff's many allegations as to various Defendants' threats, "Plaintiff was never formally charged, indicted, or convicted . . . for the criminal 'fraud' and/or 'insurance fraud' allegations." (*Id.* ¶ 45; *see also id.* ¶ 4 ("Plaintiff was never charged and/or prosecuted and/or indicted at any time for 'insurance fraud[.]'"). *But see id.* ¶ 62 ("In November 2022, Defendants initiated a criminal arrest, imprisonment, and prosecution against Plaintiff[;] . . . the arresting officer informed Plaintiff that Plaintiff's arrest and imprisonment [were] based on . . . Neubauer and/or Defendants criminal investigation and/or factual allegations that Plaintiff committed criminal acts of 'fraud' and/or 'insurance fraud.'").)[8]

### 4. Events in 2022 & 2023

Plaintiff asserts that "[i]n and/or around January 2022," CoventBridge, Neubauer, Sedgwick, and the Plan "published unprivileged, false statements" regarding Plaintiff to various third parties—including Stephanie Acosta, Rose Vlahos, Erika Lee, and others—that Plaintiff was a "fugitive" and "on the run" from the authorities because Plaintiff committed "fraud and grand larceny" against Delta. (*Id.* ¶ 1.)

Additionally, Plaintiff alleges that, on November 7, 2022, CoventBridge, Neubauer, Sedgwick, and the Plan "published unprivileged, false statements" to one Geoffrey Cruz, as well as individuals named Luisa, Jen, and Nikki, to the effect that Plaintiff was facing criminal charges for committing insurance fraud. (*Id.* ¶ 3.)

Finally, Plaintiff alleges that, "[i]n or around July 2023," Sedgwick CMS informed third parties Samuel Lopez, Laura Davis, Erika Lee, and Melissa Mendoza, as well as individuals

---

[8] In connection with Plaintiff's purported 2022 arrest and imprisonment (*see* TAC ¶¶ 62, 183), Plaintiff alleges that Plaintiff was "not incarcerated" in light of New York's "no cash bail law," (*id.* ¶ 65).

named Nikki, Jen, Luisa, John, Bruce, Thomas, and Paul, that Plaintiff engaged in the

unauthorized or unlicensed practice of law.  (*Id.* ¶ 6.)[9]

    C.  Procedural History

The Court presumes that the Parties are familiar with the procedural background of this

Action, and will therefore only summarize the proceedings that have taken place since the

Court's last substantive Order in this case.

On September 26, 2023, the Court granted in part and denied in part Plaintiff's Motion

for Reconsideration.  (*See* Op. & Order 2 (Dkt. No. 101).)  As relevant here, the Court granted

Plaintiff leave to file a TAC.  (*See id.* at 7.)  Plaintiff filed the TAC on October 26, 2023.  (*See*

TAC.)  Sedgwick, on behalf of all Defendants, filed a letter seeking leave to move to dismiss the

TAC on November 3, 2023.  (*See* Letter from Peter T. Shapiro, Esq. to Court (Nov. 3, 2023)

(Dkt. No. 107).)  Plaintiff did not file a response.  (*See generally* Dkt.)  The Court held a

conference on December 6, 2023, during which it adopted a briefing schedule.  (*See* Dkt. (minute

entry for Dec. 6, 2023); *see also* Scheduling Order (Dkt. No. 108).)

Pursuant to that briefing schedule, Defendants filed their respective Motions on

December 22, 2023.  (*See* Sedgwick Not. of Mot.; Decl. of Peter T. Shapiro in Supp. of

Sedgwick Mot. ("Shapiro Decl.") (Dkt. No. 111); Mem. of Law in Supp. of Sedgwick Mot.

("Sedgwick Mem.") (Dkt. No. 112); QBE Not. of Mot.; Decl. of Richard J. Femia, Esq. in Supp.

of QBE Mot. ("Femia Decl.") (Dkt. No. 113); Mem. of Law in Supp. of QBE Mot. (Dkt. No.

114); Neubauer Not. of Mot.; Decl. of Frank J. Wenick, Esq. in Supp. of Neubauer Mot. (Dkt.

No. 116); Mem. of Law. in Supp. of Neubauer Mot. ("Neubauer Mem.") (Dkt. No. 117).)  On

January 30, 2024, Plaintiff filed an Opposition.  (*See* Pl's Opp'n.)  Defendants filed their

---

[9] Interestingly, Plaintiff attempted to join Laura Davis in another, similar action in this District against Sedgwick CMS.  *See Davis II*, 2023 WL 6150009, at *2.

respective Replies on February 12, 2024.  (*See* Reply Mem. of Law. in Supp. of Neubauer Mot.

("Neubauer Reply") (Dkt. No. 119); Reply Mem. of Law. in Supp. of Sedgwick Mot.

("Sedgwick Reply") (Dkt. No. 120); Reply Mem. of Law. in Supp. of QBE Mot. ("QBE Reply")

(Dkt. No. 121).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration

adopted) (internal quotation marks and citation omitted).  Instead, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

Fraud claims—including common law fraud claims—are subject to the heightened pleading standard set forth in Rule 9(b). *See Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)." (collecting cases)). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However,

courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations," rather "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52, (2d Cir. 1995)). "An inference is 'strong' if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015)).

B. Analysis

The SAC raises no less than eighteen claims arising under federal and state law.[10] Those claims include the following:

1. Defamation Against CoventBridge, Neubauer, Sedgwick, and the Plan, (*see* TAC ¶¶ 1–7);

2. Violations of 42 U.S.C. § 1981 ("§ 1981) Against Sedgwick and Dane Street, (*see id.* ¶¶ 11–28);

3. First Amendment Retaliation Against All Defendants, (*see id.* ¶¶ 25, 29–53);

---

[10] The Parties appear to agree, with respect to Plaintiff's claims arising under state law, that New York law governs here. "When a party assumes in its briefs that a particular jurisdiction's law applies, it gives implied consent sufficient to establish choice of law." *Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-CV-5966, 2018 WL 4360777, at *2 (S.D.N.Y. Aug. 15, 2018) (alteration adopted) (quotation marks omitted)); *see also Travelers Cas. Ins. Co. of Am. v. Blizzard Busters Snowplowing Corp.*, No. 21-CV-8220, 2023 WL 2648772, at *4 (S.D.N.Y. Mar. 27, 2023) (same). Thus, the Court finds that New York law governs Plaintiff's state law claims. *See Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000) ("The parties' briefs assume that New York law controls this dispute, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting *Tehran–Berkeley Civil & Env't Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989))).

4. Violations of the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb et seq. ("RFRA"), Against All Defendants, (*see id.*);

5. Civil Conspiracy Under 42 U.S.C. § 1983 ("§ 1983") Against All Defendants, (*see id.*);

6. False Arrest and Imprisonment, Assault, Battery, Malicious Prosecution, and Denial of a Fair Trial Under § 1983 Against All Defendants, (*see id.* ¶¶ 54–76, 116–28);

7. Violation of New York General Business Law ("GBL") § 349 Against Sedgwick, Dane Street, and QBE, (*see id.* ¶¶ 77–108);

8. Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation Against Sedgwick, Dane Street, and QBE, (*see id.*);

9. Medical Malpractice Against Sedgwick and Dane Street, (*see id.* ¶¶ 109–15);

10. Negligence Claims Against All Defendants, (*see id.* ¶¶ 129–40);

11. Negligent Hiring, Training, Retention, and Supervision Claims Against All Defendants, (*see id.* ¶¶ 141–54);

12. Prima Facie Tort Against All Defendants, (*see id.* ¶¶ 155–69);

13. Intentional Infliction of Emotional Distress ("IIED") Against All Defendants, (*see id.* ¶¶ 174–78);

14. Negligent Infliction of Emotional Distress ("NIED") Against All Defendants, (*see id.* ¶¶ 170–73);

15. Violations of 42 U.S.C. §§ 1985(2)–(3) and 1986 Against All Defendants, (*see id.* ¶¶ 179–89);

16. Violation of the Employee Retirement Income Security Act of 1974 ("ERISA") Against Sedgwick and the Plan, (*see id.* ¶¶ 190–98);

17. Breach of Fiduciary Duty Against Sedgwick, (*see id.* ¶¶ 199–203); and

18. Breach of Physician-Patient Confidentiality Against Sedgwick and Dane Street, (*see id.* ¶¶ 204–08).[11]

Defendants raises a flurry of arguments in response to these many claims.  (*See generally* Neubauer Mem.; Sedgwick Mem.; QBE Mem.)  In the interest of efficiency, the Court will address each of Defendants' arguments to the extent necessary to resolve the instant Motion.

    1.  Rule 8

As in prior motions to dismiss, all Defendants contend that the TAC violates Rule 8 of the Federal Rule of Civil Procedure.  (*See* Sedgwick Mem. 12–13; QBE Mem. 10–12; Neubauer Mem. 18–19.)

Rule 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Moreover, "[e]ach allegation must be simple, concise, and direct."  *Id.* 8(d)(1).  The "statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  A complaint may be dismissed under Rule 8 if it "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).  In other words, "'[c]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system' and must be dismissed."  *Barsella v. United States*, 135 F.R.D. 64,

---

[11] The Court recognizes that in the Opposition to the instant Motions, Plaintiff claims to have brought no less than *ninety-one* claims.  (*See* Pl's Opp'n 117.)  However, for the reasons stated above—and given that Plaintiff knows better—the Court has limited its analysis to the claims raised in the TAC.  *See supra* Section I.A.

66 (S.D.N.Y. 1991) (quoting *Prezzi v. Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y. 1972) (alteration in original)); *see also Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) ("Dismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." (alteration in original) (quoting *Salahuddin*, 861 F.2d at 42)).

Courts in the Second Circuit have repeatedly dismissed incomprehensible complaints pursuant to Rule 8. *See, e.g.*, *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal of an "88-page, legal size, single spaced pro se complaint" that "contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension" and thus "failed to comply with the requirement of Rule 8" (italics omitted)); *Washburn v. Kingsborough Cmty. Coll.*, No. 20-CV-395, 2022 WL 843733, at *2 (E.D.N.Y. Mar. 22, 2022) (dismissing complaint where it was "nearly impossible for the [c]ourt to determine which facts are relevant to [the p]laintiff's claims"); *Anduze v. City of New York*, No. 21-CV-519, 2021 WL 795472, at *2 (S.D.N.Y. Feb. 26, 2021) (dismissing a complaint as incomprehensible because, inter alia, it was illegible and the legible portions were incomprehensible, such that "the [c]ourt is unable to properly evaluate the full nature and extent of [the] [p]laintiff's claims"); *Schoolfield v. Dep't of Corr.*, No. 91-CV-1691, 1994 WL 119740, at *3 (S.D.N.Y. Apr. 6, 1994) (dismissing a complaint because "a court need not sustain a pro se complaint which is incoherent, rambling, and unreadable" (italics omitted)).

Here, the Court has little trouble concluding that the TAC fails to comply with the requirements of Rule 8. To be sure, the TAC contains fewer pages than the SAC, however, as mentioned, Plaintiff appears to have managed that by drafting the TAC in *extraordinarily* small

font and using single spacing.  (*Compare* TAC, *with* SAC.)[12]  Moreover, even a cursory review

of the TAC reveals that it contains a "labyrinthian prolixity of unrelated and vituperative

charges," *Prezzi*, 469 F.2d at 692, such the Court has largely been "unable to properly evaluate

the full nature and extent of Plaintiff's claims," *Anduze*, 2021 WL 795472, at *2.  In other words,

this case again presents a situation where "the complaint is so confused, ambiguous, vague, or

otherwise unintelligible that its true substance, if any, 'is well disguised.'"  *Robinson v. Matos*,

No. 97-CV-7144, 1999 WL 225938, at *1 (S.D.N.Y. Apr. 19, 1999) (quoting *Simmons*, 49 F.3d

at 86).  Indeed, the TAC is at times internally inconsistent.  (*Compare* TAC ¶¶ 4, 45 (alleging

that Plaintiff was *never* charged, indicted, prosecuted, or convicted in connection with the

allegations against Plaintiff raised in the TAC), *with id.* ¶ 62 (alleging that "[i]n November 2022,

Defendants initiated a criminal arrest, imprisonment, and prosecution against Plaintiff").)  As

with the SAC, then, the TAC is "hopelessly redundant, argumentative, and has much

irrelevancy," just as "[i]t is excessively long-winded, and its wordiness is unjustified."  *Morgens*

*Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 198 F.R.D. 608, 610

(S.D.N.Y. 2001).  Accordingly—with one exception noted below, *see infra* Section II.B.3—the

Court agrees with Defendants that Plaintiff's TAC warrants dismissal under Rule 8.

Notwithstanding that conclusion, however, and in the interest of comprehensiveness, the

Court proceeds to review each of Plaintiff's claims in the TAC, as best as they can be

interpreted, on the merits.

---

[12] As noted above, Plaintiff compounded this issue by filing a shockingly long Opposition
alleging additional facts and purporting to raise more than *ninety* claims in total.  (*See generally*
Pl's Opp'n.)

2.  Defamation Claims

The Court begins by addressing Plaintiff's defamation claims.  (*See* TAC ¶¶ 1–7.)  To state a claim for defamation under New York law, a plaintiff must allege "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that either constitutes defamation per se or caused special damages."  *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (quotation marks omitted).  Under New York law, "spoken defamatory words are slander; written defamatory words are libel."  *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001); *see also Celle v. Filipino Reporter Enters. Inc*., 209 F.3d 163, 176 (2d Cir. 2000) ("Libel is a method of defamation expressed in writing or print.").

A plaintiff must plead the defamatory statements with some particularity.  N.Y. C.P.L.R. 3016(a) ("In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally.").  Under Federal Rule of Civil Procedure 8's liberal pleading standards, this requires a plaintiff to "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published."  *Neal v. Asta Funding, Inc.,* 13-CV-2176, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014); *see also Taranto v. Putnam County*, No. 21-CV-2455, 2023 WL 6318280, at *23 (S.D.N.Y. Sept. 28, 2023) (same).

Here, Plaintiff asserts that certain alleged defamatory statements—i.e., that Plaintiff was a "fugitive" and committed "insurance fraud"—were made by CoventBridge, Neubauer, Sedgwick, and the Plan "and/or Defendants['] agents and/or . . . Sedgwick CMS['] agents." (TAC ¶¶ 1, 3.)  However, those allegations fail to actually identify who made the allegedly defamatory statements; instead, they provide a list of entities and individuals who *may* have

defamed Plaintiff, and that absence of simple detail is fatal to Plaintiff's claims. *See Wellner v. City of New York*, No. 16-CV-7032, 2019 WL 1511022, at *2 (S.D.N.Y. Mar. 22, 2019) ("[A] plaintiff must provide enough context for the defendants to defend themselves—namely, 'an indication' of who made what statements, when, and to whom." (quoting *MCM Prod. USA, Inc. v. Botton*, No. 16-CV-1616, 2016 WL 5107044, at *5 (S.D.N.Y. Sept. 19, 2016)); *see also Davis II*, 2023 WL 6150009, at *17 (concluding that the allegation that Delta "'and/or' a list of nine Delta employees, 'and/or other Delta employees'" was insufficient to plausibly plead the third parties to whom the allegedly defamatory statements were published); *Ahmad v. Day*, 647 F. Supp. 3d 272, 280 (S.D.N.Y. 2022) ("A plaintiff fails to satisfy rule 8, where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." (quoting *Appalachian Enters., Inc. v. ePayment Sols., Ltd.*, No. 01-CV-11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004)); *Blige v. City Univ. of N.Y.*, No. 15-CV-8873, 2017 WL 498580, at *11 (S.D.N.Y. Jan. 19, 2017) (recommending dismissal of a defamation claim where the plaintiff "summarily allege[d] that [certain defendants] slandered him, but he does not state the substance of those statements, when they were made, or to whom they were made, amongst other missing details" and separately finding that allegations that a university and "Human Recourses" "falsely reported to the DOL that he was suspended for sexual harassment" were "too vague and conclusory to state a claim for defamation"), *report and recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017); *Yukos Cap. S.A.R.L. v. Feldman*, No. 15-CV-4964, 2016 WL 183360, at *1 (S.D.N.Y. Jan. 11, 2016) (dismissing defamation counterclaims where they alleged "generally that the defendants and their authorized agents ha[d] made various allegedly false and defamatory statements about" the third-party plaintiff); *Neal*, 2014 WL 3887760, at *3

25

(explaining that the plaintiff failed to satisfy the liberal "plausibility" pleading standard where the complaint did not identify which employee made the alleged defamatory statement); *Stevens v. New York*, 691 F. Supp. 2d 392, 399–400 (S.D.N.Y. 2009) (dismissing defamation claims against individual defendants where the plaintiff failed to assert facts from which it could be inferred that any specific individual defendants uttered defamatory comments about him); *Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau of Metro. N.Y., Inc.*, No. 08-CV-6572, 2008 WL 4702458, at *5 (S.D.N.Y. Oct. 3, 2008) (dismissing defamation claims because, among other reasons, the "plaintiff [did] not state with sufficient particularity . . . by whom [the statements at issue] were made").

In addition, Plaintiff has failed to plead facts sufficient to show that Defendants' alleged statements were "not protected by privilege." *Albert*, 239 F.3d at 266. "New York recognizes a qualified common interest privilege when the allegedly defamatory statement is made between persons who share a common interest in the subject matter." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010); *accord Present v. Avon Prod., Inc.*, 687 N.Y.S.2d 330, 333 (App. Div. 1999) (explaining that, under the common interest privilege, "[a] good faith communication upon any subject matter in which the speaker has an interest, or in reference to which he has a duty, is qualifiedly privileged if made to a person having a corresponding interest or duty"). This privilege "can cover statements made to or by a defendant's employees as well as its outside vendors." *Bah v. Apple Inc.*, No. 19-CV-3539, 2020 WL 614932, at *11 (S.D.N.Y. Feb. 10, 2020) (citing *Present*, 687 N.Y.S.2d at 333), *adhered to on denial of reconsideration*, 2021 WL 4894677 (S.D.N.Y. July 26, 2021). To overcome the common interest privilege, the plaintiff must allege facts showing that the false statements were made with (i) "actual malice, which requires either knowledge that the statements were false or reckless disregard for the

statements' truth," *id.*, or (ii) common-law malice, which "means spite or ill will," and must be

the "one and only cause for the publication," *Albert*, 239 F.3d at 272 (citation omitted)).

Fairly read, the TAC alleges that, at "all relevant times," Sedgwick, with the support of

CoventBridge, administered Workers' Compensation claims for Delta's employees. (*See*

*generally* TAC.) *See supra* Sections I.B.1–2.  In that capacity, it would seem appropriate for the

relevant Defendants to identify and discuss any suspected misconduct on the part of Plaintiff.

*See Davis II*, 2023 WL 6150009, at *18 (noting, in a similar case, that "Delta[] . . . was engaged

in an investigation of an employee's 'suspected misconduct' when it called upon Sedgwick, its

third-party claims administrator, to perform surveillance on her.  Sedgwick's resulting report,

made to its client Delta concerning the precise assignment it had been given, falls squarely

within the common interest privilege." (citation omitted)); *see also Present*, 687 N.Y.S.2d at 334

(explaining that the common interest privilege covers "statements by an outside vendor or

independent contractor" in the course of an investigation into "job-related misconduct"); *Bah*,

2020 WL 614932, at *11 (noting that communications among employees of Apple and

employees of Apple's security contractor concerning the identity of a suspected shoplifter at

Apple's stores fell within the common interest privilege).[13]  However, the TAC lacks *any*

allegation suggesting that the relevant Defendants made any false statements with actual malice

or common-law malice. (*See* TAC ¶¶ 1–7.)  Thus, Plaintiff's defamation claims must be

dismissed for this independent reason.  *See Davis II*, 2023 WL 6150009, at *18 (dismissing

---

[13] To be sure, it is unclear who the alleged third parties to whom the defamatory
statements were published *are*, as Plaintiff only provides their names and, in many instances,
provides only their first names.  (*See* TAC ¶¶ 1, 3, 6.)  But that only serves to highlight the
deficiency of Plaintiff's TAC.  *See Yukos Cap. S.A.R.L.*, 2016 WL 183360, at *1 (dismissing
defamation counterclaims where they "fail[ed] adequately to identify . . . the third parties to
whom the allegedly defamatory statements allegedly were published").

defamation claims where the complaint did not plead actual or common-law malice, but alleged that "Sedgwick's report was false" and that "one of Sedgwick's employees was racist"); *see also Present*, 687 N.Y.S.2d at 334 (explaining that "even a negligent investigation, without more, does not create an inference that a defendant suspected the falsity of the information and purposefully avoided seeking out facts that would confirm its falsity" and noting that "[t]he fact that defendants may have harbored ill will towards plaintiff is insufficient, without some evidence that this animus was the one and only cause for the publication" (quotation marks omitted)).[14]

### 3. Claims Under § 1981

Next, the Court considers Plaintiff's claims pursuant to § 1981, which are expressly brought against Sedgwick and Dane Street. (*See* TAC ¶¶ 11–28.)[15] Specifically, Plaintiff raises both discrimination and retaliation claims under that provision. (*See id.*) However, no

---

[14] The Court recognizes that Plaintiff baldly asserts that the alleged defamatory statements were "unprivileged," (*see* TAC ¶¶ 1, 3, 6), but given that "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, those allegations do not change the Court's analysis.

[15] Because Plaintiff pleads no facts relating to Dane Street in connection with Plaintiff's § 1981 claims, (*see* TAC ¶¶ 11–28), those claims are dismissed as against that Defendant.
In addition, Plaintiff may be seeking to bring these § 1981 claims against QBE as well. (*See id.* ¶ 11.) However, as with Dane Street, Plaintiff raises no allegation against QBE. To the extent Plaintiff relies on the conclusory assertion that "Sedgwick has a joint venture with QBE," (TAC ¶ 149), that reliance is unavailing because such an allegation "lacks the requisite specificity to satisfy the elements of a joint venture[,]" *Jobanputra v. Kim*, No. 21-CV-7071, 2024 WL 2055061, at *6 (S.D.N.Y. May 8, 2024); *see also id.* at *5 (explaining that, to establish the existence of a joint venture, a party must plead that "(1) two or more parties entered an agreement to create an enterprise for profit, (2) the agreement evidences the parties' mutual intent to be joint venturers, (3) each party contributed property, financing, skill, knowledge, or effort to the venture, (4) each party had some degree of joint management control over the venture, and (5) there was a provision for the sharing of both losses and profits"); *cf. Selective Beauty SAS v. Liz Claiborne, Inc.*, No. 09-CV-9764, 2010 WL 11685041, at *7 (S.D.N.Y. May 27, 2010) (dismissing a claim for breach of fiduciary duty because an allegation was "too conclusory to support a joint venture," where the plaintiff merely alleged that "[t]he joint venture contained provisions for sharing profits and losses").

Defendant appears to move to dismiss the § 1981 retaliation claim, as they make no arguments whatsoever regarding that claim. (*See generally* Sedgwick Mem.; QBE Mem.; Neubauer Mem.) Accordingly, the Motions are denied without prejudice to renewal insofar as Defendants—and particularly Sedgwick—seek dismissal of Plaintiff's § 1981 retaliation claim. In light of that holding, the Court will proceed to assess the viability of Plaintiff's § 1981 discrimination claim only.

Section 1981 requires that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). That provision thus prohibits racial discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as *employment*[.]" *Calvelos v. City of New York*, No. 19-CV-6629, 2020 WL 3414886, at *9 (S.D.N.Y. June 22, 2020) (emphasis added) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 224–25 (2d Cir. 2004)).

"To state a § 1981 claim, 'a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).'" *Ahmad v. S.R.*, No. 18-CV-3416, 2018 WL 11472415, at *3 (S.D.N.Y. July 16, 2018) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). The Supreme Court has made clear that § 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). Further, conclusory allegations of racial discrimination are insufficient to survive a motion to dismiss. *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68–69 (2d Cir. 2015) (requiring

plaintiffs to "provide meaningful specifics" of the alleged discrimination to state a claim under § 1981); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (holding that the "naked allegation" that the defendants "selectively enforced the College rules against [the] plaintiffs because they [were B]lack or Latin" failed to state a claim (alterations adopted) (quotation marks omitted)).

Notably, the Supreme Court has more recently emphasized that a § 1981 plaintiff has the burden of showing, at every stage of the proceedings, that the plaintiff's race was a "but for" cause of any alleged injury. *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 589 U.S. 327, 333 (2020) ("[Section] 1981 follows the general rule. [A] plaintiff bears the burden of showing that race was a but-for cause of its injury, [a]nd . . . the burden itself remains constant."); *see also id.* at 341 ("To prevail, a [§ 1981] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). It is not sufficient for a plaintiff merely to allege that race was a "motivating factor." *Id.* at 338 ("[N]owhere in its amendments to § 1981 did Congress so much as whisper about motivating factors."); *id.* at 341 (holding that in its pleading a § 1981 plaintiff must allege but-for causation). That said, "[t]here may be more than one but-for cause of a discriminatory action." *Kosher Ski Tours Inc. v. Okemo Ltd. Liab. Co.*, No. 20-CV-9815, 2023 WL 8720273, at *7 (S.D.N.Y. Dec. 18, 2023); *see also Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (noting, in the context of a § 1981 claim, that "the but-for causation test is a sweeping standard and that often, events have multiple but-for causes").

Here, Plaintiff asserts, in essence, that Sedgwick blocked or impaired Plaintiff's contract with a third party—Delta. (*See* TAC ¶¶ 11–20.) "[L]iability under § 1981 for interference with a third-party contract attaches only to persons who actually had the power or authority to prevent

the plaintiffs from contracting with the third party." *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342,

358 (S.D.N.Y. 2010) (citing *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002)

(requiring a demonstration "that the party both possessed sufficient authority to significantly

interfere with the individual's ability to obtain contracts with third parties, and that the party

actually exercised that authority to the individual's detriment")), *as corrected* (Aug. 19, 2010);

*see also Benzinger v. NYSARC, Inc. N.Y.C. Chapter*, 385 F. Supp. 3d 224, 233 (S.D.N.Y. 2019)

(same); *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 477 (S.D.N.Y. 2013) (explaining that

"[§] 1981 protects against the interference with a third-party contract, but liability only attaches

to persons who actually had the power or authority to prevent the plaintiff from entering into a

contract with the third party").

Having closely reviewed the TAC, the Court concludes that Plaintiff has complied with

Rule 8 in connection with the allegations relating to the § 1981 claims, and that the TAC states a

plausible § 1981 discrimination claim.  As an initial matter, Sedgwick does not dispute that

Plaintiff "is a member of a racial minority."  *Ahmad*, 2018 WL 11472415, at *3 (setting forth the

factors necessary to state a § 1981 claim).  (*See also* TAC ¶ 16 (alleging that Plaintiff is

"Hispanic").)  Moreover, the TAC "contains detailed allegations of specific conduct and

statements which, if proven at trial, could give rise to an inference of discrimination."  *Robledo*,

965 F. Supp. 2d at 476.  Specifically, on several occasions, a Sedgwick employee allegedly told

Plaintiff that "because of Plaintiff's race[] (Hispanic), Sedgwick believed Plaintiff's request for

workers comp leave of absence [sic], wages, and/or for workers comp medical treatment [sic]

were criminal acts of 'fraud' and/or 'insurance fraud[.]'"  (SAC ¶ 16.)  Plaintiff also avers that a

different Sedgwick employee used a racial slur in front of Plaintiff when referring to Hispanic

people and likewise was of the view that, because of Plaintiff's race, Plaintiff was "committ[ing]

31

'fraud'" in connection with Plaintiff's Workers' Compensation-related requests.  (*Id.* ¶ 17.)

Given that "[o]penly discriminatory oral statements merit similarly straightforward treatment[,]"

*Robledo*, 965 F. Supp. 2d at 476 (quoting *Soules v. U.S. Dept. of Hous. & Urban Dev.*, 967 F.2d

817, 824 (2d Cir. 1992)), and accepting Plaintiff's allegations as true, the Court concludes that

Plaintiff has plausibly alleged "an intent to discriminate on the basis of race," *Ahmad*, 2018 WL

11472415, at *3; *see Robledo*, 965 F. Supp. 2d at 476 (concluding that the plaintiffs had

plausibly alleged discriminatory intent where they had alleged that a defendant "frequently

ordered [a plaintiff] to leave the front sales area of the store and go to the back of the store

because she wanted only white employees greeting customers at the front of the store" (alteration

adopted) (citation omitted)); *see also Benzinger*, 385 F. Supp. 3d at 229–30, 232 (concluding that

the plaintiff had adequately alleged an intent to discriminate where he asserted that employees of

certain defendants laughed at one another's use of racial epithets); *Annuity, Welfare &*

*Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc.*

*15, 15a, 15c & 15d, AFL-CIO v. Tightseal Constr. Inc.*, No. 17-CV-3670, 2018 WL 3910827, at

*7 (S.D.N.Y. Aug. 14, 2018) (holding that a plaintiff had plausibly alleged an intent to

discriminate where it was asserted that a defendant "terminated [certain] agreements due to racial

animus directed principally at" that plaintiff's CEO as evidenced by various racist statements

allegedly made by the relevant defendant's employees); *Hicks v. IBM*, 44 F. Supp. 2d 593, 598

(S.D.N.Y. 1999) (finding that allegations of derogatory comments regarding African-Americans,

including "send them to school, clean them up[,] and they still belong in the cotton field" and

"I'm tired of [B]lack people taking taxes," were "sufficient to give rise to an inference of

discriminatory intent" and sustain a § 1981 claim); *cf. Dickerson v. State Farm Fire & Cas. Co.*,

No. 95-CV-10733, 1996 WL 445076, at *4 (S.D.N.Y. Aug. 1, 1996) ("Evidence of bias may

appear in various forms. For example, a plaintiff might identify statements reflecting bias attributable to the decision-makers responsible for the adverse action, or patterns of conduct that suggest the influence of race in decision-making.").

Finally, the Court must determine whether the discrimination concerned Plaintiff's ability to make and enforce contracts. *See Ahmad*, 2018 WL 11472415, at *3. As noted, § 1981 covers employment relationships. *See Calvelos*, 2020 WL 3414886, at *9. Plaintiff's allegations relating to the § 1981 discrimination claim can be summarized as follows: Delta had a policy of terminating employees who did not return to work within one year of having a workplace injury unless they had an approved medical leave. (*See* TAC ¶ 14.) Knowing this, Sedgwick still engaged in race-based delays relating to, and denials of, Plaintiff's Workers' Compensation-related requests needed for approved medical leave, as evidenced by the above-mentioned instances of racial animus. (*See id.* ¶¶ 16–20.) Thus, because Sedgwick did not do what was necessary for Plaintiff to obtain approved medical leave, Delta terminated Plaintiff's employment approximately one year after Plaintiff suffered a workplace injury. (*See id.* ¶¶ 13, 18–20.) Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor—as the Court must at this juncture—Plaintiff has plausibly alleged that Sedgwick was "aware of Plaintiff's [employment] with [Delta]" and that Sedgwick had the "authority to interfere with Plaintiff's" employment with Delta, *Benzinger*, 385 F. Supp. 3d at 233, insofar as it could prevent Plaintiff, on the basis of Plaintiff's race, from getting approved medical leave, resulting in the termination of Plaintiff's employment with Delta. In other words, Plaintiff has adequately alleged that Sedgwick impaired Plaintiff's employment relationship with Delta. *See Tightseal Constr. Inc.*, 2018 WL 3910827, at *7 (declining to dismiss a § 1981 discrimination

33

claim, where a plaintiff adequately alleged that the plaintiff "had contractual rights and that [a corporate defendant] infringed upon those rights" with discriminatory intent).

To be sure, Sedgwick may well be able to disprove Plaintiff's claim through discovery. But Plaintiff has alleged just enough to survive the instant Motions. Accordingly, the Court denies Defendants' Motions insofar as they seek dismissal of Plaintiff's § 1981 discrimination claim.

### 4. First Amendment Retaliation Claims

Plaintiff also raises First Amendment retaliation claims. (*See* TAC ¶¶ 25, 29–53.) Crucially, "claims under the . . . First Amendment . . . require state action," such that Defendants "cannot be sued under [that] provision[] unless they qualify as state actors." *Ahmad*, 2018 WL 11472415, at *2 (citing, inter alia, *Loce v. Time Warner Entm't Advance/Newhouse P'ship*, 191 F.3d 256, 266 (2d Cir. 1999) ("The First Amendment applies only to state actors.")). To constitute state action, there must be an alleged deprivation of a federal right "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). "Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character" that it can be regarded as governmental action. *Evans v. Newton*, 382 U.S. 296, 299 (1966); *see also Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (per curiam) (recognizing that "actions of nominally private entities are attributable to the state" under certain circumstances). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Although

there is "no single test to identify state actions and state actors," *Cooper v. U.S. Postal Serv.*, 577

F.3d 479, 491 (2d Cir. 2009) (citation omitted), three main tests have emerged:

> [T]he actions of a nominally private entity are attributable to the state . . . (1) [when]
> the entity acts pursuant to the coercive power of the state or is controlled by the
> state ("the compulsion test"); (2) when the state provides significant encouragement
> to the entity, the entity is a willful participant in joint activity with the state, or the
> entity's functions are entwined with state policies ("the joint action test" or "close
> nexus test"); or (3) when the entity has been delegated a public function by the
> state, ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per

curiam) (alterations adopted) (quotation marks omitted); *see also Hollander*, 624 F.3d at 34

(same); *Ahmad*, 2018 WL 11472415, at *2 (same).  The "ultimate issue" in this analysis is

whether the private entity's actions are "fairly attributable" to the state.  *Rendell-Baker v. Kohn*,

457 U.S. 830, 838 (1982).

As alluded to above, Plaintiff has alleged for the first time in the TAC that Neubauer is

"an alleged NYC detective/police officer."  (TAC ¶ 37; *see also id.* ¶ 38 (alleging that Neubauer

identified himself to Plaintiff as an "undercover police officer"; *id.* ¶ 42 (alleging that Neubauer

introduced himself to Plaintiff as an "NYC detective/cop"); *id.* ¶ 53 (similar).)  The Court

emphasizes at this juncture, however, that, "where a plaintiff blatantly changes his statement of

the facts in order to respond to the defendant's motion to dismiss and directly contradicts the

facts set forth in his original complaint, a court is authorized to accept the facts described in the

original complaint as true."  *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *3

(S.D.N.Y. Mar. 9, 2017) (alteration adopted) (quotation marks omitted) (quoting *Colliton v.

Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24,

2008)); *see also Davis II*, 2023 WL 6150009, at *11 ("It is well-settled that 'the court need not

accept as true allegations that conflict with a plaintiff's prior allegations.'" (quoting *Green v.

Niles*, No. 11-CV-1349, 2012 WL 987473, at *5 (S.D.N.Y. Mar. 23, 2012))); *Liverpool v. City of*

*New York*, No. 20-CV-4629, 2023 WL 2746124, at *4 (S.D.N.Y. Mar. 31, 2023) ("[T]he 'liberality with which courts examine pro se pleadings does not require a court to "accept as true allegations that conflict with a plaintiff's prior allegations.""" (italics omitted) (quoting *Vaughn v. Strickland*, No. 12-CV-2696, 2013 WL 3481413, at *6 (S.D.N.Y. July 11, 2013))); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493, 2020 WL 6323775, at *3 (S.D.N.Y. Oct. 27, 2020) ("When allegations in the original complaint are inconsistent with allegations made in the amended complaint, courts are authorized to accept the facts described in the original complaint as true." (quotations marks omitted)).

In the FAC and SAC, Plaintiff plainly identifies Neubauer as an investigator employed by CoventBridge.  (*See* SAC ¶ 2B; FAC ¶ 2B; *see also* SAC ¶ 281 (alleging that, during the time period at issue here, Neubauer was an employee of CoventBridge and under that entity's "control, oversight, and direction").)  These allegations are consistent with Exhibit 1 to the TAC, which expressly states that Neubauer was a CoventBridge investigator.  (*See* TAC Ex. 1.)  And notably absent from all prior pleadings—which were each filed long after the events at issue—is *any* allegation that Neubauer was a police officer, pretended to be a police officer, or threatened, intimidated, and assaulted Plaintiff in 2019 or at any other time.  (*Compare* TAC ¶¶ 38, 42, *with* SAC (filed on Aug. 18, 2021); FAC (filed on Feb. 6, 2021); Compl. (filed on November 2, 2020).)  It simply defies credulity that Plaintiff would wait to raise these allegations in the TAC, which was filed just shy of three *years* after the initial Complaint.  Thus, the Court will not consider these newly raised (and conveniently self-serving) allegations, which stand in such stark contrast to the unequivocal allegations raised in Plaintiff's prior pleadings.  *See Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at *7 (S.D.N.Y. June 11, 2021) (noting that the court "need not and does not credit [the plaintiff's] fresh allegations because they contradict[ed]" his

36

prior allegations); *Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.*, No. 10-CV-261, 2011 WL 1655575, at *5–6 (E.D.N.Y. May 2, 2011) (declining to accept the plaintiff's new allegations that conflicted with those in three previous iterations of the plaintiff's complaint and granting the defendant's Rule 12(b)(6) motion to dismiss).[16]

With regard to all Defendants other than Neubauer, Plaintiff has failed to plausibly allege that their conduct constituted state action, because the TAC lacks any allegations whatsoever—apart from the now-disregarded allegations relating to Neubauer—that they acted pursuant to the coercive power of the state, that they participated in a joint activity with the state, or that they were delegated a public function by the state.  (*See generally* TAC.)  Indeed, the allegations in the TAC are clear insofar as they allege that Defendants—acting on *their own* initiative—sought to mistreat Plaintiff on the basis of Plaintiff's race and religious affiliation.  (*See, e.g.*, *id.* ¶¶ 11–76.)[17]

Accordingly, because Plaintiff has failed to plausibly allege any state action, Plaintiff's First Amendment retaliation claims are dismissed.

---

[16] In light of this holding, the Court will not address the alleged 2019 altercations with Neubauer any further in this Opinion.

[17] Although Plaintiff asserts that Plaintiff was told Sedgwick would "have its[] NYC cops do a criminal investigation to prosecute him criminally for fraud[,]" (TAC ¶ 35), the Court notes that it "may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless—that is, if they are fanciful, fantastic or delusional," *Campbell v. Columbia Univ.*, No. 22-CV-10164, 2023 WL 6038024, at *4 (S.D.N.Y. Sept. 15, 2023) (quoting *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011)).  Given that "crimes are prosecuted by the government, not by private parties[,]" *Williams v. Maney*, No. 17-CV-5853, 2017 WL 6729363, at *1 (S.D.N.Y. Oct. 26, 2017), this is precisely the sort of claim that the Court may dismiss as fanciful.

5. RFRA Claims

Turning to Plaintiff's claims under RFRA, (*see* TAC ¶¶ 29–53), those claims plainly fail. RFRA "imposes restrictions on only the government and not private actors[.]" *Parks v. Montefiore Med. Ctr.*, No. 23-CV-4945, 2024 WL 917330, at *4 (S.D.N.Y. Mar. 4, 2024) (citing 42 U.S.C. § 2000bb-1); *see also Patel*, 2024 WL 37094, at *2 n.2 (explaining that RFRA "prohibits the federal government from substantially burdening a person's exercise of religion unless the government can demonstrate that application of the burden (1) furthers a compelling governmental interest; and (2) is the least restrictive means of furthering that interest."). As explained above, Plaintiff has failed to plausibly plead that any Defendant is a government actor, let alone a federal government actor. *See supra* Section II.B.4. And, crucially, even if Plaintiff could establish that the complained-of acts were carried about by state- or local-government surrogates—or by "private parties where the government could also exert its power[,]" *see In re Congregation Birchos Yosef*, 535 B.R. 629, 637 n.6 (Bankr. S.D.N.Y. 2015)[18]—Plaintiff's RFRA claims would still fail because "RFRA no longer applies to state governments," *Kravitz v. Purcell*, 87 F.4th 111, 121 (2d Cir. 2023); *see also Shamilov v. City of New York*, No. 20-CV-10224, 2024 WL 708193, at *3 (S.D.N.Y. Feb. 21, 2024) ("In 1997, the Supreme Court struck down RFRA as applied to state and local governments." (ultimately citing *City of Boerne v. Flores*, 521 U.S. 507 (1997)); *Moorish Holey Temple of Sci. of World Free & Sundry v. Connecticut*, No. 21-CV-1564, 2023 WL 5893242, at *2 (D. Conn. Sept. 11, 2023) ("RFRA remains operative only as to the federal government."). Put simply, the TAC is devoid of any allegations of federal government involvement and, therefore, Plaintiff's RFRA claims must fail.

---

[18] To be clear, the Second Circuit has held that RFRA applies to suits between private parties if the federal government also could enforce the statute at issue. *Hankins v. Lyght*, 441 F.3d 96, 103 (2d Cir. 2006). However, the TAC lacks any allegations suggesting that this could be the case here. (*See generally* TAC.)

*See Patel*, 2024 WL 37094, at *2 n.2 ("Because the named defendants in this lawsuit are [the p]laintiff's brother and sister-in-law, and there are no allegations of government involvement, RFRA bears no relevance to this matter."); *see also Azzarmi v. Federal Gov't*, No. 23-CV-3620, 2023 WL 7448180, at *2 (S.D.N.Y. Oct. 12, 2023) (noting—in a separate action—that Plaintiff asserted RFRA claims against "the Federal Government" and that the court had ordered Plaintiff "to show cause why, in light of [Plaintiff's] history of engaging in vexatious litigation, [Plaintiff] should not be barred from filing any further civil actions in this court IFP without first obtaining permission from the court to file [a] complaint").

### 6. Civil Conspiracy Claims Under § 1983

Next, the Court addresses Plaintiff's claims of civil conspiracy under § 1983. (*See* TAC ¶¶ 29–53.) "To prove a [§] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Barkai v. Neuendorf*, No. 21-CV-4060, 2024 WL 710315, at *8 (S.D.N.Y. Feb. 21, 2024) (citation omitted); *see also Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (same). "Although a plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, the pleadings must present facts tending to show agreement and concerted action." *Dubose v. Jimenez*, No. 22-CV-2124, 2023 WL 5237639, at *16 (S.D.N.Y. Aug. 15, 2023) (alteration adopted) (quoting *Concepcion v. City of New York*, No. 05-CV-8501, 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008)). "Conclusory allegations of a [Section] 1983 conspiracy are insufficient." *Id.* (alteration adopted) (quoting *Pangburn*, 200 F.3d at 72).

As an initial matter, Plaintiff's § 1983 conspiracy claims cannot survive Defendants'

Motions because, as set above, Plaintiff has not plausibly alleged the involvement of *any* state

actor.  *See supra* Section II.B.4.  Plaintiff has also failed to plausibly allege conspiratorial

conduct for the simple reason that the allegations touching on such conduct in the TAC are

wholly conclusory.  For example, Plaintiff baldly asserts that "Sedgwick CMS engaged in a civil

conspiracy with" Sedgwick SIU, CoventBridge, and Neubauer.  (TAC ¶ 37; *see also id.* ¶ 56

("From around January 2018 through present, Defendants, all of them, were jointly involved in a

common scheme, a conspiracy, to ensure that Plaintiff was detained on false charges.").)  Such

statements are not enough to plausibly suggest participation in an agreement to violate Plaintiff's

constitutional rights.  *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (recognizing that a

plaintiff alleging a conspiracy "must provide some factual basis supporting a meeting of the

minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful

end" (citation omitted)); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)

("[C]omplaints containing only conclusory, vague, or general allegations that the defendants

have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific

instances of misconduct." (citation omitted)); *Walker v. Capra*, No. 22-CV-7638, 2024 WL

21938, at *11 (S.D.N.Y. Jan. 2, 2024) (holding that pro se plaintiff failed to state a conspiracy

claim, where he "allege[d] all of the defendants conspired in one way or another with someone

else," but did not provide "further factual supporting allegations of what actions such defendants

took in furtherance of the conspiracy"); *Jackson v. Nassau County*, 552 F. Supp. 3d 350, 382–83

(E.D.N.Y. 2021) (holding that the plaintiff failed to make out a claim for conspiracy, where

complaint alleged no overt acts which were reasonably related to promotion of alleged

conspiracy, such as contact or coordination between village and county defendants, and complaint failed to allege facts from which meeting of minds could be inferred); *Warren v. Fischl*, 33 F. Supp. 2d 171, 177–78 (E.D.N.Y. 1999) (concluding that a pro se plaintiff's allegation of conspiracy was insufficient despite his specific claims of conspiracy to alter tapes and create illegal search warrants, where there was no basis for the assertion that defendants actually conspired together to bring about these actions); *Hickey-McAllister v. Brit. Airways*, 978 F. Supp. 133, 139 (E.D.N.Y. 1997) ("Because plaintiff has alleged no facts at all from which meeting of the minds between [the defendants] on a course of action intended to deprive plaintiff of her constitutional rights can be inferred, her allegations are insufficient to survive a motion for dismissal.").

Accordingly, Plaintiff's § 1983 conspiracy claims are dismissed.

### 7. False Arrest and Imprisonment, Assault, Battery, Malicious Prosecution, and Denial of a Fair Trial Claims Under § 1983

Beyond the now-dismissed conspiracy claim, Plaintiff brings numerous other claims under § 1983 as well. (*See* TAC ¶¶ 54–76, 116–28.) The Supreme Court has explained that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). To constitute state action, there must be an alleged deprivation of a federal right "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation *must be a person who may fairly be said to be a state actor*." *Lugar*, 457 U.S. at 937 (emphasis added). Given that the Court has

41

already determined that Plaintiff has failed to plausibly plead any state action in the TAC, *see supra* Section II.B.4, Plaintiff's remaining § 1983 claims are dismissed.

### 8.  New York GBL § 349 Claims

The Court next turns to Plaintiff's claims under New York GBL § 349.  (*See* TAC ¶¶ 77–108.)  "Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce[.]'"  *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting N.Y. GBL § 349).  To state a claim under New York GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Id.* (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Newman v. Bayer Corp.*, 695 F. Supp. 3d 469, 477 (S.D.N.Y. 2023*)* (applying the same standard); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).  With regard to the first element, a plaintiff must allege that "the allegedly deceptive conduct has a broad impact on consumers at large."  *Singh v. City of New York*, 217 N.E.3d 1, 7 (N.Y. 2023) (quotation marks omitted).  "Moreover, [§] 349 is aimed at modest transactions rather than complex or unique arrangements in which each side was knowledgeable and received expert representation and advice."  *Id.* (quotation marks omitted).  Finally, "deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Manrique v. State Farm Mut. Auto. Ins. Co.*, No. 21-CV-224, 2021 WL 5745717, at *7 (S.D.N.Y. Dec. 2, 2021) (alteration adopted) (quoting *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003)).

Here, Plaintiff seems to allege that Sedgwick CMS, as well as Dane Street and QBE, engaged in deceptive acts or practices by using unlicensed or otherwise fake doctors to "purposely deny or refuse to authorize statutory medical treatment to injured workers, such as

Plaintiff, without consulting a licensed medical doctor." (TAC ¶ 77; *see also id.* ¶ 80 (alleging

that Sedgwick CMS, Dane Street, and QBE had a "standard and regular business practice[] and

pattern[] in using unqualified and unlicensed 'doctors' and 'experts' (who are usually just data

entry clerks) to analyze and deny medical treatment".) However, apart from asserting in a

conclusory manner that this alleged practice was "materially misleading," Plaintiff fails to

plausibly allege that Sedgwick CMS, Dane Street, or QBE *misled* Plaintiff in any way. *See*

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,

171 N.E.3d 1192, 1198 (N.Y. 2021) ("A defendant's actions are materially misleading when they

are likely to mislead a reasonable consumer acting reasonably under the circumstances."

(quotation marks omitted)). (*See also* TAC ¶¶ 77–108.) In essence, Plaintiff's claims are "naked

assertions devoid of [any] factual enhancement." *Iqbal*, 556 U.S. at 678. Thus, Plaintiffs have

not stated "[f]actual allegations" that are "enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. Accordingly, although Plaintiff alleges potentially unethical

and unlawful conduct on the part of Sedgwick CMS, Dane Street, or QBE, Plaintiff fails to

plausibly allege a violation of § 349, so Plaintiff's claims under that statutory provision are

dismissed. *See Himmelstein*, 171 N.E.3d at 1197 ("[T]o avoid dismissal, plaintiffs must

adequately plead [all three of the] elements" required to establish a claim under § 349.).

### 9.  Fraud, Fraudulent Inducement, and Fraudulent Misrepresentation Claims

The Court next turns to Plaintiff's various fraud-based claims. (*See* TAC ¶¶ 77–108.)

"Under New York law, the five elements of fraud are (1) a material misrepresentation or

omission of fact (2) made by [a] defendant with knowledge of its falsity (3) and intent to

defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the

plaintiff." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir.

2021) (quotation marks omitted); *see also Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775,

784 (2d Cir. 2003) ("To succeed on a theory of fraudulent misrepresentation under New York law, a plaintiff must show that the defendant made a false representation of a material fact to the plaintiff and that the plaintiff suffered injury as a result of justifiable reliance upon that fact."). With regard to fraudulent *inducement* claims, "a plaintiff must prove '(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wild Bunch, SA v. Vendian Ent., LLC*, No. 17-CV-1383, 2018 WL 1365690, at *3 n.1 (S.D.N.Y. Feb. 26, 2018) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (per curiam)); *accord Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996).  And as the Court previously explained, to adequately plead fraud, plaintiffs must also meet the particularity requirement in Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015); *see also Reyes v. Upfield US Inc.*, 694 F. Supp. 3d 408, 430 (S.D.N.Y. 2023) (same).

The contours of Plaintiff's fraud claims are far from clear.  However, the thrust of those claims seems to be that Sedgwick CMS, Dane Street, and QBE (and perhaps other Defendants) fraudulently misrepresented that they employed licensed and credentialed physicians when, in fact, they used allegedly unlicensed physicians, such as Panos, and individuals who were not even doctors to impermissibly deny claimants the benefits to which they were entitled.  (*See generally* TAC ¶¶ 77–108.)  Regardless of the specific theory of Plaintiff's case, however, Plaintiff's fraud claims fail for the simple reason that there are no non-conclusory allegations in

the TAC with regard to reliance.  (*See* TAC ¶¶ 101–02 (alleging that Plaintiff "relied upon"
Sedgwick, Dane Street, the Plan, "and/or" QBE's claims that they would reimburse Plaintiff for
certain medical expenses); *see also id.* ¶ 107 ("From 2016 through present, Plaintiff justifiably
relied on . . . Dane Street, Sedgwick, [the Plan], Neubauer, Covent[B]ridge, . . . & QBE's
material misrepresentations alleged above to Plaintiff's detriment.").)  Indeed, it is difficult to
understand *how* Plaintiff could have relied on any fraudulent misrepresentations on the part of
these Defendants, given that they were alleged to have been engaged by Delta to handle
Workers' Compensation matters such that Plaintiff—as a Delta employee—had no choice but to
manage Plaintiff's claims through those entities.  (*See id.* ¶¶ 11, 13.)  In any event, "[t]o satisfy
the reliance element of a common-law fraud claim, a plaintiff must show that her reliance was
'actual,' that is, that she actually saw, read, or heard—and then acted on the basis of—the
allegedly fraudulent statements."  *Suero v. NFL*, No. 22-CV-31, 2022 WL 17985657, at *14
(S.D.N.Y. Dec. 16, 2022) (citing *Olson v. Major League Baseball*, 29 F.4th 59, 76–77 (2d Cir.
2022)); *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d
291, 312 (S.D.N.Y. 2014) ("To plead common law fraud, a plaintiff must allege *with
particularity* that it actually relied upon the supposed misstatements." (emphasis added)), *aff'd
sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir.
2016).  And here, Plaintiff has failed to plausibly plead any such allegation *at all*, much less with
the requisite degree of particularity.  *See SRM Glob. Master Fund*, 829 F.3d at 178 (holding that
the plaintiff's fraud claims were properly dismissed because the plaintiff failed to allege that it
acted in reliance on the defendants' misrepresentations); *see also Charles Equip. Energy Sys.,
LLC v. INNIO Waukesha Gas Engines, Inc.*, 636 F. Supp. 3d 476, 482 (S.D.N.Y. 2022)

(dismissing a fraud claim where the plaintiff did "not plead any facts that indicate[d] how it

actually relied on the [allegedly fraudulent] statement whatsoever").

In sum, Plaintiff's fraud, fraudulent inducement, and fraudulent misrepresentation claims

are dismissed.[19]

### 10.  Medical Malpractice Claims

Turning to Plaintiff's medical malpractice claim, (*see* TAC ¶¶ 109–15), "[u]nder New

York law, the requisite elements of proof in a medical malpractice action are (1) a deviation or

departure from accepted practice, and (2) evidence that such departure was a proximate cause of

injury or damage[,]" *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at

*19 (S.D.N.Y. Mar. 29, 2016) (quoting *Torres v. City of New York*, 154 F. Supp. 2d 814, 819

(S.D.N.Y. 2001)); *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 252 (S.D.N.Y. 2013)

("Under New York law, the essential elements of a medical malpractice claim are a departure

from good and accepted medical practice and evidence that such departure was a proximate

cause of the plaintiff's injury." (alteration adopted) (quotation marks omitted)).  "'Medical

malpractice is . . . a form of negligence. . . ,' and 'conduct may be deemed malpractice, rather

than negligence, when it constitutes medical treatment or bears a substantial relationship to the

rendition of medical treatment by a licensed physician.'"  *Radin v. Tun*, No. 12-CV-1393, 2015

WL 4645255, at *17 (E.D.N.Y. Aug. 4, 2015) (alterations adopted) (quotation marks omitted)

(quoting *Scott v. Uljanov*, 541 N.E.2d 398, 399 (N.Y. 1989)); *see also Pearce v. Feinstein*, 754

F. Supp. 308, 310 (W.D.N.Y. 1990) ("The distinction between ordinary negligence and

---

[19] Although Plaintiff appears to assert separate claims for aiding and abetting "medical fraud," (*see* TAC ¶¶ 8–10), Plaintiff does nothing more than plead "[t]hreadbare recitals of the elements of a cause of action," which, the Supreme Court has instructed, "do not suffice[]" to plead a plausible claim, *Iqbal*, 556 U.S. at 678.  Thus, those claims—such as they are—are dismissed as well.

malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of the facts." (citation omitted)).

"[I]n order to state a claim for medical malpractice, a plaintiff must specify the injuries he suffered and allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care." *Isaac v. City of New York*, No. 17-CV-1021, 2018 WL 1322196, at *7 (S.D.N.Y. Mar. 13, 2018) (citations omitted); *see also Koulkina v. City of New York*, 559 F. Supp. 2d 300, 329–30 (S.D.N.Y. 2008) (dismissing a medical malpractice claim because the "plaintiffs [did] not allege how [the defendant's] alleged conduct deviated from accepted medical practice and caused them any harm").

Here, Plaintiff brings medical malpractice claims against Sedgwick and Dane Street. (*See* TAC ¶¶ 109–15.) In New York, an employer "may be vicariously liable for the medical malpractice" of its employees or agents. *I.M. v. United States*, 362 F. Supp. 3d 161, 198 (S.D.N.Y. 2019) (collecting cases). However, Plaintiff specifically avers that there was no "formal doctor-patient relationship with . . . Sedgwick and/or Dane Street's alleged doctors[.]" (TAC ¶ 110.) Thus, these claims must fail, as it is black-letter law that "[a] physician's duty of care is ordinarily one owed to his or her patient." *Purdy v. Pub. Adm'r of Cty. of Westchester*, 526 N.E.2d 4, 8 (N.Y. 1988); *see also Polardo v. Adelberg*, No. 22-CV-2533, 2023 WL 2664612, at *21 (S.D.N.Y. Mar. 28, 2023) ("Under New York law, a physician-patient relationship is a prerequisite for a medical malpractice action." (quoting *Koltz v. Bezmen*, 822 F. Supp. 114, 118 (E.D.N.Y. 1993))); *Davis v. S. Nassau Cmtys. Hosp.*, 46 N.E.3d 614, 619 (N.Y. 2015) (explaining that New York courts have declined to impose a broad duty of care extending

from physicians past their patients "to members of the . . . community individually" (alteration in individual) (citation omitted)).

Accordingly, the Court dismisses Plaintiff's medical malpractice claims.

### 11. Negligence Claims

Plaintiff also brings negligence claims against all Defendants.  (*See* TAC ¶¶ 129–40.)[20] The elements of a negligence claim under New York law are: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (citing *Merino v. N.Y.C. Transit Auth.,* 639 N.Y.S.2d 784 (App. Div. 1996)); *see also Baisley v. Slade Indus., Inc.*, No. 22-CV-3791, 2024 WL 3012568, at *7 (S.D.N.Y. June 13, 2024) ("[U]nder New York law, a plaintiff seeking to establish a traditional negligence claim must demonstrate that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach caused the plaintiff's injuries; and (4) the plaintiff suffered damages." (quotation marks omitted) (citing, inter alia, *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016)).  And given that Plaintiff also brings negligence per se claims, the Court notes that, in New York, the "violation of a State statute that imposes a specific duty constitutes negligence per se, or may even create absolute liability."  *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F. Supp. 2d 508, 522 (S.D.N.Y. 2006) (quoting *Elliott v. City of New York*, 747 N.E.2d 760, 762 (N.Y. 2001)).  "[T]o state a claim for negligence per se, a plaintiff must allege the violation of a New York state statute as a prerequisite."  *Cardoso v. Wells Fargo Bank, N.A.*, No. 21-CV-8189, 2022 WL 4368109, at *6 (S.D.N.Y. Sept. 20, 2022).

---

[20] Although Plaintiff frames the negligence claims as against all Defendants, Plaintiff does not appear to make any allegations against Neubauer.

Plaintiff's allegations appear to focus on Sedgwick's purported violation of a number of provisions under New York's Education Law and Workers' Compensation Law.  (*See* TAC ¶¶ 130–32.)  Specifically, Plaintiff avers that Sedgwick violated N.Y. Educ. Law § 6529, which governs the power of the board of regents "to confer the degree of doctor of medicine (M.D.)," and N.Y. Educ. Law § 6530, which simply provides a laundry list of definitions of misconduct. The Court has no trouble concluding that negligence per se claims based on these provisions should be dismissed, because § 6529 is plainly irrelevant to this Action, and § 6530 is a mere definitions section that, moreover, applies on its face to *licensees*—i.e., those alleged to have committed professional misconduct, such as physicians themselves.  *See Cardoso*, 2022 WL 4368109, at *6 (explaining that "a plaintiff must allege the violation of a New York state statute" to state a negligence per se claim).

Plaintiff also alleges that Sedgwick violated several sections of the Workers' Compensation Law.  (*See* TAC ¶¶ 130–32.)  In particular, Plaintiff asserts that Sedgwick violated N.Y. Workers' Comp. Law: § 2, which provides a long list of definitions applicable to the Workers' Compensation Law; § 3, which sets forth, inter alia, the myriad types of employment to which the Workers' Compensation Law applies; § 11, which provides that "[t]he exclusive remedy available to an employee injured in the course of employment is provided by the Workers' Compensation law unless *the employer* intentionally injured the employee or failed to secure workers' compensation insurance[,]" *Reed v. Paramount Wire Co.*, No. 04-CV-8059, 2005 WL 1476455, at *2 (S.D.N.Y. June 21, 2005) (emphasis added) (quotation marks and footnotes omitted); and § 52(5), which provides that the WCB chairperson, "upon finding that an employer has failed for a period of not less than ten consecutive days to make the provision for payment of compensation . . . , may impose upon such employer, in addition to all other

penalties, fines or assessments provided for in this chapter, a penalty of up to two thousand

dollars for each ten day period of non-compliance or a sum not in excess of two times the cost of

compensation for its payroll for the period of such failure," *see* N.Y. Workers' Comp. Law §§ 2–

3, 11, 52(5).  As with the provisions of the Education Law that Plaintiff relies upon, these

Workers' Compensation Law provisions do not carry the day, as they do not apply to Sedgwick

in this context, or to any other Defendant for that matter, because these provisions apply to

*employers*, and as noted above, during all relevant times Plaintiff worked for Delta.  (*See, e.g.*,

TAC ¶ 11.)  Thus, Plaintiff has failed to plausibly plead the predicate violation of a state statute

that is required to state a negligence per se claim.  *See Cardoso*, 2022 WL 4368109, at *6.

Beyond the foregoing, Plaintiff vaguely asserts that Sedgwick "failed to observe" a litany

of state (and federal) statutory provisions.  (TAC ¶ 129.)  However, such conclusory allegations

are "insufficient to invoke the negligence per se doctrine." *In re Sept. 11 Prop. Damage & Bus.*

*Loss Litig.*, 468 F. Supp. 2d at 522 (dismissing a negligence per se claim where the operative

complaint set forth only a "conclusory allegation" that a defendant "failed to abide by [various]

fire and safety codes"); *see also Cardoso*, 2022 WL 4368109, at *6 (agreeing that the plaintiffs

failed to state a negligence per se claim where they "vaguely alleg[ed]" only that "the aforesaid

was a violation of, inter alia, HAMP, GBL, RESPA, and FTC statutes" (alteration adopted)

(citation omitted)).

Insofar as Plaintiff contends that Defendants may be held vicariously liable for the

negligence actions of their employees or agents, "vicarious liability attaches only where an

employee's acts were 'in furtherance of the employer's business and *within the scope of*

*employment*.'"  *Pentacon BV v. Vanderhaegen*, — F. Supp. 3d —, 2024 WL 1255992, at *15

(S.D.N.Y. Mar. 25, 2024) (emphasis added) (quoting *Browne v. Lyft, Inc.*, 194 N.Y.S.3d 85, 87-

50

88 (App. Div. 2023)), *reconsideration denied*, 2024 WL 3835334 (S.D.N.Y. Aug. 15, 2024).

However, Plaintiff concedes that "[t]he acts committed by Defendants' agents'," including

Neubauer and Panos, among others, were "*outside the scope*" of employment of Defendants'

employees.  (TAC ¶ 139 (emphasis added).)  Thus, as alleged, any claim relying on vicarious

liability must fail.

      In sum, Plaintiff's negligence claims are dismissed.

12.  Negligent Hiring, Training, Retention, and Supervision Claims

      In addition to pure negligence and negligence per se claims, Plaintiff brings negligent

hiring, training, retention, and supervision claims against all Defendants as well.  (*See* TAC

¶¶ 141–54.)[21]  These claims focus on varying Defendants' employment of Neubauer on the one

hand, and allegedly "fraudulent unlicensed doctors," like Panos, on the other.  (*See id.*)

      "In instances where an employer cannot be held vicariously liable for its employee's torts

because they occur outside the scope of his employment, the employer can still be held liable

under theories of negligent hiring, negligent retention, and negligent supervision."  *I.M.*, 362

F. Supp. 3d at 207 (alteration adopted) (quoting *Bouchard v. N.Y. Archdiocese*, 719 F. Supp. 2d

255, 260–61 (S.D.N.Y. 2010)).

      To state a claim for negligent hiring, training, supervision or retention, "in addition to the

standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant

were in an employee-employer relationship; (2) that the employer knew or should have known of

the employee's propensity for the conduct which caused the injury prior to the injury's

occurrence; and (3) that the tort was committed on the employer's premises or with the

employer's chattels."  *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations

---

[21] Given that there are no allegations that Neubauer was an employer, (*see generally* TAC), the Court will not construe the TAC as asserting this claim against him.

and internal quotation marks omitted); *Bouchard*, 719 F. Supp. 2d at 260–61 (same). To prevail

on such a claim, a plaintiff must establish, among other things, that "the employer knew or

should have known of the employee's propensity for the conduct which caused the injury prior to

the injury's occurrence." *Ehrens*, 385 F.3d at 235 (internal quotation marks omitted). "A cause

of action for negligent hiring or retention requires allegations that the employer . . . failed to

investigate a prospective employee notwithstanding knowledge of facts that would lead a

reasonably prudent person to investigate that prospective employee." *Bouchard*, 719 F. Supp. 2d

at 261 (internal quotation marks omitted).

       With regard to Neubauer, the TAC contains nothing more than the wholly conclusory

allegation that a combination of Defendant "had actual or constructive knowledge of . . .

Neubauer's propensity for the sort of physically abuse behavior [that] caused Plaintiff's physical

bodily injuries." (TAC ¶ 142.) Such allegations are simply not enough to survive a motion to

dismiss. *See Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 609 (S.D.N.Y. 2013)

(dismissing a claim for negligent hiring, training, retention, and supervision where the plaintiff's

allegations as to the defendants "knowledge of their respective employees' propensity for

fraudulent conduct are wholly conclusory"); *see also Papelino v. Albany Coll. of Pharmacy of

Union Univ.*, 633 F.3d 81, 94 (2d Cir. 2011) ("Under New York law, a plaintiff asserting a claim

for negligent supervision *must*," allege that, inter alia, "the employer knew or should have known

of the employee's propensity for the tortious conduct" (emphasis added)).

       As to the "fraudulent unlicensed doctors," Plaintiff only alleges that Defendants have had

"constructive knowledge" that Panos committed "medical fraud" since 2013, and, thus, that he

had "a propensity to engage in . . . medical fraud." (TAC ¶¶ 150–52.) As an initial matter, then,

Plaintiff's claims must fail to the extent that they rely on the negligent retention of anyone other

than Panos.  *See Papelino*, 633 F.3d at 94.  Turning to Panos, Plaintiff's own exhibits belie the notion that Defendants had "knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee," *Bouchard*, 719 F. Supp. 2d at 261, because, during the relevant time period, Panos was allegedly "posing as another orthopedic surgeon to review medical and workers' compensation claims," (TAC 58; *see also id.* at 54 (noting that Panos had used an "assumed medical alter ego" during the relevant time period).)  Thus, Plaintiff has not plausibly alleged that Defendants "knew or should have known of [Panos's] propensity for the conduct which caused [Plaintiff's] injury prior to the injury's occurrence[.]"  *Ehrens*, 385 F.3d at 235 (quotation marks omitted).

Accordingly, Plaintiff's claims for negligent hiring, training, retention, and supervision are dismissed.

### 13.  Prima Facie Tort Claims

The Court next turns to Plaintiff's prima facie tort claims.  (*See* TAC ¶¶ 155–69.)  At the outset, the Court emphasizes that "[p]rima facie tort is a disfavored claim under New York law." *Bottone v. Roche*, No. 22-CV-10349, 2024 WL 869552, at *6 (S.D.N.Y. Feb. 28, 2024) (citation omitted).  To survive a motion to dismiss a prima facie tort claim, a plaintiff must allege: (1) the defendant's intentional infliction of harm; (2) special damages resulting from the defendant's actions; (3) a lack of "excuse or justification"; and (4) that the defendant's act or acts would otherwise be lawful.  *NE Brands LLC v. Seattle Pac. Indus., Inc.*, No. 19-CV-7420, 2020 WL 4287989, at *2 (S.D.N.Y. July 27, 2020) (quoting *U.S. for Use and Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996)).  "The first element requires *disinterested malevolence*, which means that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the *sole intent to harm*."  *Moore v. United States*, No. 18-CV-3679, 2020 WL 2765833, at *8 (S.D.N.Y. May 27, 2020) (emphases

added) (quotation marks omitted) (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293,

304–05 (S.D.N.Y. 2002)); *see also Pandian v. N.Y. Health & Hosps. Corp.*, 863 N.Y.S.2d 668,

669–70 (App. Div. 2008) (dismissing the plaintiff's prima facie tort claim where the plaintiff

failed to allege that malevolence was the defendants' sole motivation); *Curiano v. Suozzi*, 480

N.Y.S.2d 466, 469 (App. Div. 1984) (explaining that the "sole" motivation for the defendant's

actions must be one of malevolence).  As to the second element, "[s]pecial damages" refers to an

injury made up of a "specific and measurable loss." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135,

143 (1985).

Plaintiff's prima facie tort claim fails at the first element.  In the TAC, Plaintiff asserts,

without more, that "Defendants' sole motivation in inflicting harm and injuring Plaintiff was

disinterested malevolence."  (TAC ¶ 169.)  As an initial matter, this assertion is belied somewhat

by Plaintiff's allegation that "Sedgwick and Dane Street's whole business model is based on junk

science and intentional medical fraud," suggesting that those entities, at least, had a broad and

non-personal financial incentive for their alleged behavior.  (*Id.* ¶ 97.)  *See also Marcella v. ARP

Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985) ("When there are other motives, such as profit,

self-interest, or business advantage, there is no recovery under the doctrine of prima facie tort."

(italics omitted)).  Moreover, Plaintiff's allegation as to disinterested malevolence is nothing

more than a "conclusory recital" of the intentional-infliction-of-harm element that, standing

alone, "does not suffice to plead" a prima facie tort claim.  *Bottone*, 2024 WL 869552, at *6

(citing *Iqbal*, 556 U.S. at 678) (dismissing a prima facie tort claim where the plaintiff alleged

that the defendants "engaged in an extortion effort . . . undertaken with the sole motive to injure"

the plaintiff (citation omitted)); *see also Petrone v. Turner Publ'g Co. LLC*, No. 22-CV-2698,

2023 WL 7302447, at *2 (S.D.N.Y. Nov. 6, 2023) (explaining that "disinterested malevolence"

is "a malicious [motive] unmixed with any other and *exclusively directed* to injury and damage

of another" (emphasis added)); *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420,

477 (S.D.N.Y. 2021) (concluding that the defendant failed to state a prima facie tort

counterclaim where it only alleged "in conclusory terms that [the plaintiff] acted 'maliciously'

and 'out of spite and revenge,'" but "allege[d] no facts to support the claim that [the plaintiff]

acted with 'disinterested malice'" (citation omitted)).

Accordingly, Plaintiff's prima facie tort claim is dismissed.

### 14. NIED Claims

The Court turns next to Plaintiff's NIED claims.  (*See* TAC ¶¶ 170–73.)  "To plead [an

NIED] claim under New York law, a plaintiff must allege (1) a breach of duty owed to the

plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the

emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm."

*Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) (en banc) (collecting cases).

Importantly, however, "deliberate or intentional actions do not create a claim for negligent

infliction of emotional distress."  *Semencic v. County of Nassau*, No. 18-CV-5244, 2020 WL

435294, at *10 (E.D.N.Y. Jan. 28, 2020).

Here, Plaintiff bases these NIED claims on Defendants' alleged "fraud and/or medical

fraud" and "conspiracy to violate Plaintiff[']s constitutional rights," as well as Neubauer's

alleged "brutal assault/battery."  (TAC ¶ 172.)  However, where alleged actions are "intentional

and deliberate and . . . in their nature offensive, they are outside the ambit of actionable

negligence."  *Chai v. N.Y. Univ.*, No. 23-CV-9192, 2024 WL 4042468, at *11 (S.D.N.Y. Sept. 4,

2024) (quoting *Chau v. Donovan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019)); *see also*

*Greenaway v. County of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) ("[I]nsofar as [the

p]laintiffs have made claims of negligence, including negligent infliction of emotional distress,

against the [defendant-]police officers for their confinement and tasing of [one plaintiff], those claims must fail, as [they] have alleged *intentional* acts . . . ."). Since one thing the TAC does make clear is that Defendants' alleged actions were intentional, Plaintiff's NIED cannot survive Defendants' Motions. *Bah v. City of New York*, No. 13-CV-6690, 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014) ("[W]hen the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed."); *see also Smith v. City of New York*, No. 14-CV-4982, 2015 WL 4008642, at *2 (E.D.N.Y. June 30, 2015) (dismissing NIED claims because they were "on the intentional act of alleged assault" because "assault cannot sound in negligence").

Accordingly, Plaintiff's NIED claims are dismissed.

### 15.  IIED Claims

In addition to NIED claims, Plaintiff has also raised IIED claims based on alleged conduct that took place in 2022.  (*See* TAC ¶¶ 174–78.)  "The state-law tort of [IIED] has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *23 (S.D.N.Y. Mar. 30, 2018) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)); *see also Panchishak v. County of Rockland*, No. 20-CV-10095, 2021 WL 4429840, at *8 (S.D.N.Y. Sept. 27, 2021) (same).  "New York courts have imposed a very high threshold for [IIED] claims, requiring that the conduct must be so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *33 (S.D.N.Y. Sept. 29, 2023) (quoting *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005)); *see also Chanko v. Am. Broad Cos.*, 49 N.E.3d 1171, 1178 (N.Y. 2016) (similar).

56

Alleging sufficiently "outrageous" conduct is a very high bar. *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 375 (S.D.N.Y. 2016) ("[E]ven a false charge of sexual harassment does not rise to the level of outrage required under New York law." (citation omitted)); *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (explaining that IIED "remains a highly disfavored tort under New York law" and "is to be invoked only as a last resort" (quotation marks omitted)).

In connection with the IIED claims in the TAC, Plaintiff asserts that unspecified "Defendants" engaged in extreme and outrageous conduct by "committing fraud and/or medical fraud to deny Plaintiff statutory worker comp [sic] medical treatment" and conspiring "to violate Plaintiff[']s constitutional rights . . . through brutal assault/battery" and other vague means. (TAC ¶ 175.)  With respect to the conspiracy to violate Plaintiff's constitutional rights, the TAC is entirely devoid of any non-conclusory allegations suggesting that Plaintiff was subject to "brutal assault/battery[ or] police brutality," or that Plaintiff was subject to false arrest, imprisonment, or malicious prosecution in 2022.  (*See generally* TAC; *see also id.* ¶¶ 4, 45 (noting that Plaintiff was *never* charged, indicted, prosecuted, or convicted in connection with the allegations against Plaintiff raised in the TAC); *id.* ¶ 62 (asserting in a conclusory—and self-contradictory—manner that "[i]n November 2022, Defendants initiated a criminal arrest, imprisonment, and prosecution against Plaintiff" without providing any meaningful factual support).)  In short, on this record, Plaintiff has not plausibly pled any extreme and outrageous conduct in 2022 arising from a conspiracy to violate Plaintiff's constitutional rights.  *See Seward*, 2023 WL 6387180, at *33 (describing the "very high threshold" courts in New York require for IIED claims); *see also Semencic*, 2020 WL 435294, at *9 (holding that the plaintiff failed to state an IIED claim because he did not plead extreme and outrageous conduct even where he alleged

that the defendants gave false information to the police leading to his arrest and prosecution);

*Palmer v. City of New York*, 564 F. Supp. 3d 221, 239 (E.D.N.Y. 2001) (finding an IIED claim

insufficiently pled even though "the defendant police officers came to [the] plaintiffs' home [to

evict the plaintiffs], were shown a copy of the state court's [order staying the eviction] and

bankruptcy court filings, ignored [the] plaintiffs' pleas to stay in their home, arrested [the

plaintiff] in front of the neighbors, and 'coerced' [one plaintiff] into telling [the other plaintiff] to

leave the home").

   With respect to the allegations relating to the "fraudulent" denial of certain Workers'

Compensation benefits, the Court concludes that Plaintiff has failed to plausibly allege that

Defendants' conduct was sufficiently outrageous and extreme.  "The element of outrageous

conduct is 'rigorous, and difficult to satisfy,' and its purpose is to filter out trivial complaints and

assure that the claim of severe emotional distress is genuine."  *In re Sears Holdings Corp.*, No.

20-CV-3712, 2021 WL 1192112 (S.D.N.Y. Mar. 30, 2021) (quoting *Medcalf v. Walsh*, 938 F.

Supp. 2d 478, 488 (S.D.N.Y. 2013)); *see also Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702

(N.Y. 1993) (similar).  As it relates to Plaintiff's claims, the decision of the New York Court of

Appeals in *Burlew v. American Mutual Insurance Co.*, 472 N.E.2d 682 (N.Y. 1984) is

instructive.  There, the plaintiff—who was receiving Workers' Compensation benefits through

the defendant, which was her employer's insurance carrier—alleged she was told during an

interview held in advance of an authorization for a requested surgery, that she was "crazy if [she

thought the defendant was] going to support [her] for the rest of [her] life."  *Burlew*, 472 N.E.2d

at 415.  The plaintiff also asserted that the defendant had sought to undermine her Workers'

Compensation claims by "procur[ing] an affidavit . . . that purported to give an expert opinion

that [the] plaintiff's condition was due to a pre-existing injury."  *Id.*  In assessing the plaintiff's

IIED claim, the court held that "[n]either the . . . statement that [the] plaintiff could not expect to be supported by the insurer forever[,] nor the carrier's attempt to disprove [the] plaintiff's claim was so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society." *Id.* at 417–18. So it is here. As alleged, Plaintiff's assertions relating to any fraudulent attempt to deny Plaintiff Workers' Compensation benefits simply do not amount to cognizably extreme and outrageous conduct. *See Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 270 (E.D.N.Y. 2009) ("Even construing the facts most favorably to [the] plaintiffs, based upon [the] defendants' alleged conduct in failing to provide the requested [housing] accommodations and bringing retaliatory eviction proceedings, the [c]ourt concludes that the IIED claim must be dismissed based upon the current complaint for failure to allege any specific conduct so outrageous in character and so extreme in degree to go beyond all possible bounds of decency."); *Luethke v. Seagram Co.*, No. 00-CV-7946, 2000 WL 1880324, at *2 (S.D.N.Y. Dec. 28, 2000) ("[D]issemination of lies . . . do[es] not, as a matter of law, constitute the 'extreme and outrageous conduct' required to state [an IIED claim] under New York law." (quotation marks omitted)).

In sum, Plaintiff's IIED claims are dismissed.

### 16.  Claims Under §§ 1985(2)–(3) and 1986

Plaintiff also brings claims under 42 U.S.C. §§ 1985(2)–(3) and 1986. (*See* TAC ¶¶ 180–89.) "Section 1985(2) 'renders actionable (1) a conspiracy, (2) for the purpose of impeding, hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any State or Territory, (4) with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.'" *Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *12 (S.D.N.Y. Mar. 13, 2018) (alteration adopted) (quoting *Rodriguez v. City of*

*New York*, No. 05-CV-10682, 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008)). And to

state a claim under § 1985(3), "a plaintiff must allege: '(1) a conspiracy; (2) for the purpose of

depriving, either directly or indirectly, any person or class of persons of equal protection of the

laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is deprived of any right of

a citizen of the United States." *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2020

WL 5720753, at *12 (S.D.N.Y. Sept. 24, 2020) (quoting *Brown v. City of Oneonta*, 221 F.3d

329, 341 (2d Cir. 1999)). Both provisions require "some factual basis supporting a meeting of

the minds, such that the defendants entered into an agreement, express or tacit, to achieve the

unlawful end." *Thomas*, 2018 WL 1322207, at *12 (alteration adopted) (quoting *Webb*, 340 F.3d

at 110). Importantly, "[c]laims of conspiracy that are vague and provide no basis in fact must be

dismissed." *Id.* (quoting *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 540 (S.D.N.Y.

2015)).

As with Plaintiff's conspiracy claims under § 1983, Plaintiff's claims under §§ 1985(2)–

(3) and 1986 fail because the TAC is devoid of any non-conclusory allegations of conspiracy.

(*See* TAC ¶ 180 (asserting that Defendants and others "continuously conspired" with one another

from "2016 through early 2019"); *id.* ¶ 185 (alleging that Defendants and others "continuously

[met] with and conspired with" one another from 2016 to the present; *see also id.* ¶ 179

(asserting that various Defendants were "co-conspirators").) These allegations are plainly

insufficient to plausibly allege a conspiracy. *See Ahmad*, 2018 WL 11472415, at *4 (dismissing

§ 1985(3) claims where the operative pleading "provide[d] only conclusory allegations that [the

defendants] conspired with each other and other students, without providing any factual detail

regarding *who* agreed and *what* they agreed to do" (emphases in original)); *see also Ciambriello*,

292 F.3d at 325 ("[C]omplaints containing only conclusory, vague, or general allegations that the

defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (citation omitted)); *Williams v. Long Beach Mortg. Co.*, No. 15-CV-5952, 2016 WL 5720810, at *7 (S.D.N.Y. Sept. 30, 2016) ("Claims of conspiracy that are vague and provide no basis in fact must be dismissed." (alteration adopted) (citation omitted)).

Accordingly, Plaintiff's claims under §§ 1985(2)–(3) and 1986 are dismissed.

### 17.  ERISA Claims

The Court next turns to Plaintiff's ERISA Claims against Sedgwick and the Plan.  (*See* TAC ¶¶ 190–98.)

Crediting the allegation—ostensibly drawn from a court decision from the District of Minnesota—that Sedgwick *was* a plan administrator and therefore subject to liability under ERISA, (*see id.* ¶ 190), the ERISA claims against Sedgwick still fail because Plaintiff has raised no allegation even remotely suggesting that Plaintiff exhausted available administrative remedies, (*see generally id.*).  "ERISA *requires* both that employee benefit plans have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before turning to litigation." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) (emphasis added).  The administrative exhaustion "requirement was intended to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a non[-]adversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993).  Given these important purposes, "the federal courts—including [the Second] Circuit—have recognized a firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006).  Under that policy, a plaintiff *must* pursue "those administrative

[processes] provided for in the relevant plan or policy." *Kennedy*, 989 F.2d at 594. While the failure to exhaust administrative remedies is an affirmative defense, *see Paese*, 449 F.3d at 446, courts have nevertheless dismissed claims where plaintiffs fail to plead, or plead only in conclusory fashion, that they have exhausted their administrative remedies, *see Cheeks v. Montefiore Med. Ctr.*, No. 23-CV-2170, 2023 WL 8235755, at *2 (S.D.N.Y. Nov. 28, 2023) ("If a plaintiff fails to allege in her complaint that she exhausted the applicable administrative remedies, her claims under . . . ERISA are subject to dismissal on a Rule 12(b)(6) motion."); *see also Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 296 (E.D.N.Y. 2021) (dismissing claims under ERISA for failure to allege exhaustion and collecting cases); *Peppiatt v Aetna Life Ins. Co.*, No 17-CV-2444, 2017 WL 6034641, at *5 (E.D.N.Y Dec. 4, 2017) ("[C]ourts routinely dismiss ERISA claims . . . on a [Rule] 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." (collecting cases)).

In sum, the ERISA claims are dismissed.

### 18.  Breach of Fiduciary Duty Claim

Plaintiff also brings a claim against Sedgwick for breach of fiduciary duty. (*See* TAC ¶¶ 199–203.)  "Under New York Law, in order to succeed on a cause of action for breach of a fiduciary duty, [a plaintiff] must allege '(1) the existence of a fiduciary duty, (2) breach of that duty by the defendant, and (3) damages.'" *Kamdem-Ouaffo v. Balchem Corp.*, No. 17-CV-2810, 2018 WL 4386092, at *18 (S.D.N.Y. Sept. 14, 2018) (quoting *Barton v. Smartstream Techs., Inc.*, No. 16-CV-1718, 2016 WL 2742426, at *7 (S.D.N.Y. May 9, 2016)).

"A fiduciary relationship arises only when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Kamdem-Ouaffo*, 2018 WL 4386092, at *18 (alteration adopted) (citation omitted); *see also McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22-CV-1138, 2022 WL 18027555, at *10 (S.D.N.Y.

Dec. 30, 2022) ("A fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." (quoting *Faulkner v. Arista Recs., LLC*, 602 F. Supp. 2d 470, 482 (S.D.N.Y. 2009))).  Importantly, "to plausibly allege a fiduciary duty, a plaintiff must state *facts* that—taken together—adequately suggest that the parties engaged in a long enduring relationship [that led to] a special relationship of trust and confidence that existed independent of the contractual duties." *McKenzie-Morris*, 2022 WL 18027555, at *10 (emphasis in original) (quotation marks omitted).  "At the heart of the fiduciary relationship lies reliance, and de facto control and dominance." *Shamrock Power Sales, LLC v. Scherer*, No. 12-CV-8959, 2015 WL 5730339, at *20 (S.D.N.Y. Sept. 30, 2015) (citation omitted).

Here, Plaintiff's breach-of-fiduciary-duty claim fails at the first step.  Plaintiff asserts that Sedgwick—and specifically Sedgwick CMS—"had a fiduciary relationship" with Plaintiff because it "employed doctors/surgeons to provide Plaintiff . . . with medical treatment/services." (TAC ¶ 199.)  However, that assertion, standing alone, does not plausibly allege that Sedgwick was "under a duty to act for or to give advice for the benefit of" Plaintiff, *Kamdem-Ouaffo*, 2018 WL 4386092, at *18, that Plaintiff had "reposed trust or confidence in the integrity or fidelity of [Sedgwick such that it] gain[ed] a resulting superiority of influence over [Plaintiff,]" *McKenzie-Morris*, 2022 WL 18027555, at *10, or that Sedgwick had "de facto control and dominance" over Plaintiff, *Shamrock Power Sales*, 2015 WL 5730339, at *20.  Indeed, as alleged, any duty on Sedgwick's part would seem to have run to *Delta*—i.e., the party with whom it had contracted to provide claims management services.  (*See* TAC ¶ 11.)  At bottom, Plaintiff's claim against Sedgwick for breach of fiduciary duty relies upon the conclusory assertion that Sedgwick and

Plaintiff had a fiduciary relationship, and that—without more—is not enough to survive a motion to dismiss. *See Clifford v. Janklow*, No. 22-CV-1259, 2023 WL 2711353, at *6 (S.D.N.Y. Mar. 30, 2023) (dismissing a claim for breach of fiduciary duty where the plaintiffs had "vaguely" alleged that "a fiduciary relationship existed" between them and the defendant, and that one plaintiff "reposed trust and confidence" in the defendant, because "conclusory allegations are insufficient to plausibly allege a claim"); *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 498 (S.D.N.Y. 2017) (concluding that the allegation that "the relationship between [the parties] was one of trust and confidence as [the defendant] was in a superior position, possessed special knowledge, [and] was in a position to exercise influence over [the plaintiff]" constituted "nothing more than bare recitations of the legal elements of a fiduciary duty"); *Faulkner*, 602 F. Supp. 2d at 482 ("[C]onclusory allegations that [parties] shared a 'long and enduring relationship of trust and confidence' are insufficient to plead a fiduciary relationship and survive a motion to dismiss." (alteration omitted) (quotation marks and citation omitted)); *Boley v. Pineloch Assocs., Ltd.*, 700 F. Supp. 673, 681 (S.D.N.Y. 1988) (holding that the allegation that the "defendants entered into a fiduciary relationship of trust and confidence with plaintiffs" was "a conclusory allegation" that "does not satisfy Rule 8").

In sum, Plaintiff's claim for breach of fiduciary duty against Sedgwick is dismissed.

### 19.  Breach of Physician-Patient Confidentiality Claims

Finally, the Court addresses Plaintiff's breach of physician-patient confidentiality claims. (*See* TAC ¶¶ 204–08.)  The Court concludes that these claims must be dismissed because Plaintiff abandoned them.  Specifically, Plaintiff failed to respond to Sedgwick's arguments as to this claim, (*see* Sedgwick Mem. 30–31), nor does Plaintiff raise any arguments at all with respect to these claims in the extraordinarily lengthy Opposition, (*see generally* Pl's Opp'n).  *See Romain v. State Farm Fire & Cas. Co.*, 639 F. Supp. 3d 416, 421 n.3 (E.D.N.Y. 2022) (holding

that "[p]laintiffs appear to have abandoned their claim . . . as they do not address this claim in

their opposition to [d]efendant's [d]ismissal [m]otion") *Randall v. Dish Net., LLC*, No. 17-CV-

5428, 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018) (granting defendant's motion to dismiss

because "the [p]laintiff's failure to address [certain] claims in his opposition papers to [the]

motion [to dismiss]," showed that they were "abandoned" and collecting cases); *see also Romeo

& Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7

(S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . , a plaintiff abandons a claim by

failing to address the defendant's arguments in support of dismissing that claim."); *Youmans v.

Schiro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) ("A plaintiff's

failure to respond to contentions raised in a motion to dismiss claims constitute[s] an

abandonment of those claims."); *Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, at

*10 (S.D.N.Y. Dec. 29, 2010) (report and recommendation) ("Federal courts have the discretion

to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails

to address in their opposition papers defendants' arguments for dismissing such a claim.")

(collecting cases).  Indeed, "'[i]n the Second Circuit, a plaintiff's failure to respond to

contentions raised in a motion to dismiss constitute[s] an abandonment of those claims' and

*necessitates* their dismissal."  *Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 468

(S.D.N.Y. 2023) (emphasis added) (quoting *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL

836773, at *17 (S.D.N.Y. Mar. 18, 2022)).  Accordingly, Plaintiff's breach of physician-patient

confidentiality claims are dismissed.

III.  Conclusion

For the foregoing reasons, the Motions are granted in part and denied in part.[22]  To

summarize, the Court dismisses all of Plaintiff's claims with the exception of the § 1981

discrimination and retaliation claims against Sedgwick.  And as noted above, the Court's denial

of the Sedgwick Motion as it relates to Plaintiff's § 1981 *retaliation* claim is without prejudice to

renewal.  Beyond that, the claims the Court has dismissed are dismissed with prejudice, as

Plaintiff is not entitled to yet another "go-around" to see which of Plaintiff's ever-evolving

claims stick.  See *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff

was not entitled to "a third go-around"); *see also Bryant v. Capra*, No. 18-CV-10198, 2021 WL

323263, at *5 (S.D.N.Y. Feb. 1, 2021) (dismissing the plaintiff's claims with prejudice where it

was "the second time adjudicating his claims, and [the p]laintiff ha[d] not fixed the problems

identified by the Court in" a prior opinion); *Melvin v. County of Westchester*, No. 14-CV-2995,

2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with

prejudice where "[the p]laintiff ha[d] already had two bites at the apple, and they ha[d] proven

fruitless" (alteration adopted) (citation omitted)); *Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp.

2d 364, 373 (S.D.N.Y. 2009) (dismissing an amended complaint with prejudice where the

plaintiff failed to cure the deficiencies identified in his complaint despite "being given ample

---

[22] Because the claims against unserved Defendants the Plan and Dane Street suffer from the same deficiencies as the claims against the served Defendants, the claims against the Plan and Dane Street are dismissed as well.  *See Garcia v. City of New York*, No. 15-CV-7470, 2017 WL 1169640, at *1 n.1 (S.D.N.Y. Mar. 28, 2017) ("Although [certain defendants] have yet to be served, because Plaintiffs' claims against them are the same as the claims against [other, served defendants] and suffer from the same deficiencies, the Court will treat the instant motion as if it were brought on behalf of all Defendants."); *Hamilton v. Broomfield*, No. 95-CV-3241, 1998 WL 17697, at *1 n.1 (S.D.N.Y. Jan. 20, 1998) (dismissing claims against unserved defendants because they were identical to claims against defendants who filed the motion to dismiss).

opportunity to do so").  Accordingly, all Defendants other than Sedgwick are dismissed from this

Action.

The Court will hold a telephonic conference in this case on October 24, 2024, at 11:00

AM ET.

Finally, the Clerk of Court is respectfully directed to terminate the pending Motion.

(Dkt. No. 109–10, 115.)

SO ORDERED.

Dated:    September 24, 2024
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge