UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AASIR AZZARMI,

                    Plaintiff,

      v.

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC., *et al.*,

                    Defendants.

No. 20-CV-9155 (KMK)

<u>ORDER</u>

---

KENNETH M. KARAS, United States District Judge:

Before the Court are the Motions for Reconsideration submitted by Pro se Plaintiff Aasir Azzarmi's ("Plaintiff"). (*See* Pl.'s Mot. for Reconsideration (Oct. 7, 2024) ("Pl.'s Oct. 7 Mot.") (Dkt. No. 123); Pl.'s Mot. for Reconsideration (Oct. 17, 2024) ("Pl.'s Oct. 17 Mot.") (Dkt. No. 134).) Also before the Court is the Motion for Sanctions and to Strike submitted by Defendants Sedgwick Claims Management Services, Inc. ("Sedgwick CMS"), Sedgewick SIU, Inc. ("Sedgwick SIU") (collectively, "Defendants"), and Cross-Motion for Sanctions Submitted by former Defendants Neubauer, Coventbridge Group, DN Consulting, and Does 1-10. (*See* Defs.' Mot. for Sanctions ("Defs.' Mot.") (Dkt. No. 140); Cross-Mot. for Sanctions ("Cross Mot.") (Dkt. No. 143).)

For the reasons that follow, the Court denies both Defendants' Motions for Sanctions and to Strike and former Defendants' Cross Motion for Sanctions. Furthermore, the Court denies Plaintiff's Motion for Reconsideration.

I.  Background

A.  Procedural History

On November 2, 2020 Plaintiff initiated this Action against Donald Neubauer ("Neubauer"), CoventBridge Group (USA) ("CoventBridge"), Sedgwick CMS, Sedgewick SIU; QBE North America Operations ("QBE"), and Does 1-10 ("Does") (collectively, "former Defendants") alleging a number of claims in connection with the termination of Plaintiff's employment by Delta Airlines.  (*See* Compl. (Dkt. No. 3).)

 On February 6, 2021, Plaintiff filed an Amended Complaint.  (*See* Am. Compl. (Dkt. No. 6).)  On August 5, 2021, Defendants filed a Motion to Dismiss.  (*See* First Mot. to Dismiss (Dkt. No. 33).)  Plaintiff did not respond to the Motion to Dismiss.  Instead, Plaintiff filed a Second Amended Complaint without leave of the Court.  (*See* Second Am. Compl. (Dkt. No. 34).)  The Court nonetheless accepted the Second Amended Complaint.  (*See* Order (August 27, 2021) ("2021 Order") (Dkt. No. 45).)

On September 30, 2021, Sedgwick CMS and Sedgwick SIU and filed a Second Motion to Dismiss.  (*See* Second Mot. to Dismiss (Dkt. No. 56).)  On December 7, 2021, QBE filed its own Motion to Dismiss.  (*See* Mot. to Dismiss (Dkt. No. 83).)  On September 20, 2022, the Action was dismissed with prejudice pursuant to Rule 8, Rule 15, and Rule 41, because Plaintiff had repeatedly failed to abide by the Federal Rules and the Court's Individual Rules, despite warnings by this Court to do so.  (*See* Order of Dismissal (Sept. 20, 2022) ("2022 Op.") (Dkt. No. 89).)

On November 11, 2022, Plaintiff filed a Motion for Reconsideration.  (*See* Mot. (Dkt. No. 97).)  On September 26, 2023, this Court granted Plaintiff's Motion for Reconsideration. (*See* Op. and Order ("2023 Op.") (Dkt. No. 101).)  On October 26, 2023, Plaintiff filed a Third

Amended Complaint.  (*See* Third Am. Compl. (Dkt. No. 106).)  On December 22, 2023, Defendants each filed a Motion to Dismiss.  (*See* Sedgwick CMS & Sedgwick SIU Mot. To Dismiss (Dkt. No. 109); QBE Mot. To Dismiss (Dkt. No. 110); CoventBridge & Neubauer Mot. To Dismiss (Dkt. No. 115).)  On September 24, 2024, the Court issued an Opinion dismissing all of Plaintiff's claims with the exception of Plaintiff's § 1981 claim against Sedgwick CMS and Sedgwick SIU.  (*See* Op. and Order (Sept. 24, 2024) ("2024 Op.") (Dkt. No. 122).)

On October 7, 2024, Plaintiff filed a Motion for Reconsideration.  (*See* Pl.'s Oct. 7 Mot. (Dkt. No. 123).) On October 17, 2024, Plaintiff filed a Motion to Appoint Pro Bono Counsel in which Plaintiff renewed the Motion for Reconsideration.  (*See* Pl.'s Oct. 17 Mot. (Dkt. No. 134).)  On October 28, 2024, Defendants responded, opposing the Motion For Reconsideration, and separately moving the Court to sanction Plaintiff.  (*See* Defs.' Mot. (Dkt. No. 140).)  On November 1, 2024, former Defendants cross-moved the Court to sanction Plaintiff.  (*See* Cross Mot. (Dkt. No. 143).)  On November 20, 2024, Plaintiff filed a response to Defendants' Motions. (*See* Resp. (Dkt. No. 145).)

## II.  Discussion

### A.  Reconsideration

First, the Court addresses Plaintiff's Motion for Reconsideration.  (*See generally* Pl.'s Oct. 7 Mot.)  Plaintiff argues that the Court erred when it granted, in part, the Motion to Dismiss in its September 2024 Opinion.  Specifically, Plaintiff argues that (1) the Court was required to permit Plaintiff notice and an opportunity to be heard before withdrawing special solicitude; (2) revocation of special solicitude does not apply to civil rights plaintiffs; (3) the Court misapplied the standard in Federal Rule 8; (4) the Court improperly converted the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgement; (5) the Court improperly dismissed

Plaintiff's claims for reasons never articulated by Defendants; (6) the Court erred in finding that Defendant Neubauer was not a state actor; (7) the Court failed to address a number of Plaintiff's claims; (8) that Plaintiff's tort claims were erroneously dismissed; (9) that the Court was obligated to treat Plaintiff's complaint as amended by later filings; (10) that the Court was obligated to provide Plaintiff with leave to amend the dismissed claims.  (*See* Pl.'s Oct. 7 Mot. 3–19.). The Court addresses and disposes of each of these arguments in turn.

    1.  Standard of Review

    In the Second Circuit, motions for reconsideration are judged by a "strict" standard. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Priya Harriram, v. City University of New York*, No. 22-CV-9712, 2024 WL 4553906, at *3 (S.D.N.Y. Oct. 22, 2024) ("Reconsideration is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003))).  Motions for reconsideration are not intended to be "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Id.* (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)) (internal citations omitted)).

    To prevail on a motion for reconsideration, Plaintiff is required to show that there was: "(1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *United States v. Adegbite*, 877 F.2d 174, 178 (2d Cir. 1989).  Plaintiff's Memorandum is far from clear, but Plaintiff appears to argue that the Court should reconsider its prior ruling because of a "clear error of law."  (*See, e.g.*, Pl.'s Oct. 7 Mot. at 2 ("[r]econsideration is necessary . . . to correct . . . clear errors.").  This is an exacting standard.  *See William Van Wade v. John Nitti*, No. 21-CV-06726, 2024 WL 4578977, at *2

(W.D.N.Y. Oct. 25, 2024) ("With respect to the third of these criteria, to justify review of a decision, the Court must have a clear conviction of error on a point of law that is certain to recur." (quoting *Turner v. Vill. of Lakewood*, No. 11-CV-211, 2013 WL 5437370, at *3 (W.D.N.Y. Sept. 27, 2013) (internal quotation marks omitted))); *see also Mitura v. Finco Servs., Inc.*, No. 23-CV-2879, 2024 WL 1160643, at *1 (S.D.N.Y. Mar. 18, 2024) ("'These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court.'" (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)))).

    2.  Analysis

        a.  Special Solicitude

Plaintiff claims entitlement to notice and opportunity to be heard before special solicitude was withdrawn, and that special solicitude could not be withdrawn because Plaintiff only had one motion survive the motion to dismiss stage.  (*See* Pl.'s Oct. 7 Mot. 3.)  As to the first argument, Plaintiff points to no authority requiring the court provide notice and an opportunity to be heard before revoking special solicitude (*see id*. at 3–5), and the Court's own search has found none.  Instead, Plaintiff cites cases which hold that notice and an opportunity to be heard are required when a court dismisses a plaintiff's claim sua sponte. (*See id.* at 3.)  This authority is inapplicable here, where the claims were dismissed in response to Defendants' Motion, rather than on the Court's own accord.  (*See generally* 2024 Op.)  Accordingly, Plaintiff has not met their burden on this point.

As to the second argument, Plaintiff's arguments fall short. Plaintiff relies upon one case from 2007 which suggests that the threshold that some courts have used to deem a pro se litigant sufficiently experienced to withdraw "special solicitude" is a dozen cases.  (*See* Pl.'s Oct. 7 Mot.

4 (citing *Edwards v. Selsky*, No. 04-CV-1054, 2007 WL 748442, at *3 (N.D.N.Y. Mar. 6,

2007)).)  But Plaintiff admits that this standard is not universally adhered to.  (*See id*. ("[g]ranted,

there are some cases revoking the special status of a pro se litigant who has filed fewer than a

dozen cases.").)  In any case, Plaintiff far surpasses this threshold, having been a party of 32

cases in federal court.  *See Party Search: Azzarmi*, PACER,

(https://pcl.uscourts.gov/pcl/pages/search/results/parties.jsf?sid=8202e47b4b984565ace4a8ccb4e

f9682 [https://perma.cc/U6YR-SJAK]) (last visited Oct. 31, 2024).

        Plaintiff also points to *Sledge v. Kooi*, 564 F.3d 105 (2d Cir. 2009), a case in which the

Second Circuit suggested (but did not hold) that the district court had erred in revoking special

solicitude where the plaintiff had only appeared in a dozen federal and state actions.  *See id.* at

109–10.  This authority, far from being overlooked by the Court, was cited in the Court's own

opinion.  (*See* 2024 Op. 4.)  Furthermore, *Sledge* simply supports the proposition that special

solicitude should only be withdrawn with respect to a *specific* procedural stage in the litigation,

and only where a court can makes certain findings about the litigant's familiarity with the

"particular procedural setting presented."  564 F.3d at 109.  Here, the Court found that Plaintiff

was familiar with the motion to dismiss stage based on the high number of cases in which

Plaintiff litigated motions to dismiss and specifically noted Chief Judge Swain's findings

regarding Plaintiff's numerous cases against the same Defendants Plaintiff sued in this case.

(*See* 2024 Op. 5–7.)  Because the Court thoroughly addressed this issue in its September 2024

Opinion, Plaintiff has not met the burden for reconsideration.

        Plaintiff also suggests that removal of special solicitude is itself in tension with

pronouncements by the Supreme Court.  (*See* Pl.'s Oct. 7 Mot. 5.)  But "tension" does not a

"clear error of law" make, and Plaintiff cites no Supreme Court authority that conflicts, let alone

overturns the Second Circuit's holding regarding withdrawal of special solicitude.  (*See id*.)
*Accord Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (affirming withdrawal of special
solicitude is a practice permitted by the Second Circuit).  The Court was permitted to rely on,
and did explicitly rely on, Second Circuit caselaw that has explained the necessary findings
before courts should withdraw a pro se plaintiff's special solicitude.  (2024 Op. 4–10 (citing
*Sledge*, 564 F.3d at 109; *Patel v. Patel*, No. 23-CV-8765, 2024 WL 37094, at *4 (S.D.N.Y. Jan.
3, 2024); *Uppal v. W. Express, Inc.*, No. 15-CV-9976, 2019 WL 2450794, at *4, 10 (S.D.N.Y.
Feb. 27, 2019); *Davis v. Sedgwick Claims Mgmt. Servs.* (*Davis I*), No. 21-CV-7090, 2022 WL
153251, at *5 (S.D.N.Y. Jan. 18, 2022); *Tracy*, 623 F.3d at 100–03).)  Therefore, Plaintiff's
claim here is rejected.

### b.  Special Solicitude and Civil Rights Plaintiffs

Plaintiff seems to suggest that additional facts asserted in Plaintiff's Opposition and
unauthorized affidavit should have been considered because civil rights and discrimination
claims are "not affected by a revocation of special solicitude."  (*See* Pl.'s Oct. 7 Mot. 5.)  To
support this proposition, Plaintiff cites only to cases that suggest district courts should consider
improperly submitted affidavits during the motion to dismiss stage where the litigant is pro se.
(*See id*. (citing *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004); *Washington v.
James*, 782 F.2d 1134, 1138–39 (2d Cir. 1986); *Runnion ex rel. Runnion v. Girl Scouts of
Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015); *Ramirez v. County of
San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015)).)  However, Plaintiff cites no authority
suggesting that the Court is required to do so, and particularly not where Plaintiff's special
solicitude has been rightly revoked, as it has been here.  (*See* Pl.'s Oct. 7 Mot. 5.)  Under the
"high bar" for reconsideration motions, this argument is rejected.

<u>c.  The Court's Application of Rule 8</u>

Plaintiff alleges that the Court has wrongly applied a heightened pleading standard to the claims in the Complaint.  (*See* Pl.'s Oct. 7 Mot. 6–9.)  The Court understands Plaintiff to be referring to the Court's application of a "heightened pleading standard" pursuant to Rule 9(b). (*See* 2024 Op. 18–19, 44.)  The Court applied this heightened pleading standard to only claims of fraud, as required by Federal Rule of Civil Procedure 9(b).  (*See* 2024 Op. 18–21, 44 (citing *Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020); *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015); *Reyes v. Upfield US Inc.*, 694 F. Supp. 3d 408, 430 (S.D.N.Y. 2023)).)

Plaintiff does not provide the Court with any authority that its invocation of the heightened pleading standard required by Federal Rule 9(b) was a "clear error of law," (*see generally* Pl.'s Oct. 7 Mot.), nor could Plaintiff succeed with such a claim given the clear line of authority on this point.  *See Sutton v. Tapscott*, No. 22-CV-2327, 2024 WL 4657123, at *5 (2d Cir. Nov. 4, 2024) (applying a heightened pleading standard to a fraud claim under 9(b)); *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (noting that "[c]laims sounding in fraud must satisfy the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b)").  The case Plaintiff appears to believe is controlling has to do with the pleading requirements for an employment discrimination claim under Title VII.  (*See id*. at 8. (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511–12 (2002).)  *But see Swierkiewicz*, 534 U.S. at 511 ("It is not appropriate to require a plaintiff to plead facts establishing a prima facie case [of employment discrimination] because the *McDonnell Douglas* framework does not apply in every employment discrimination case.")  However, the Court did not apply the heightened pleading

standard to any employment discrimination claim under Title VII.  (*See* 2024 Op. 43–44.)  For these reasons, Plaintiff's claim lacks merit.

<u>d.  Conversion of a Rule 12(b)(6) Motion to a Rule 56 Motion</u>

Plaintiff alleges that the Court improperly converted Defendant's 12(b)(6) Motion to Dismiss into a Rule 56 Motion for Summary Judgement.  (*See* Pl.'s Oct. 7 Mot. 9–10.)  Plaintiff alleges this occurred when the Court "weighed competing inferences from facts in the complaint" and "resolved factual disputes based on facts not in the record."  (*See id*. at 9.)

It is not clear what inferences or factual disputes to which Plaintiff is referring. The Court refused to take Plaintiff's later allegations that Neubauer was an undercover police officer as fact, because Plaintiff's allegations that Neubauer was a state actor were raised for the first time in the TAC.  (*See* 2024 Op. 35–36.)  This determination was consistent with several cases cited by the Court in the Opinion.  (*See id*.)  As noted in the Opinion, it is well settled that a district court may ignore newly asserted facts where "a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint."  *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at \*3 (S.D.N.Y. Mar. 9, 2017) (alteration adopted) (quotation marks omitted); *see also Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400, 2008 WL 4386764, at \*6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (same).  Plaintiff has not introduced case law which demonstrates that this determination was a "clear error of law."  (*See* Pl.'s Oct. 7 Mot. 9–10.)

The Court also referred to Plaintiff's litigation history in determining whether to withdraw special solicitude.  (*See* 2024 Op. 4–9.)  As noted, courts in the Second Circuit often do—and indeed must—look to a plaintiff's litigation history to determine whether the plaintiff is

an "experienced litigant." *See, e.g.*, *Tolliver v. Jordan*, No. 19-CV-11823, 2021 WL 2741728, at *4, 4 n.6 (S.D.N.Y. July 1, 2021) (referring to plaintiff's litigation history outside of the instant action); *Burroughs v. County of Nassau*, No. 13-CV-6784, 2014 WL 2587580, at *3 (E.D.N.Y. June 9, 2014) (same). Furthermore, the law permits judges evaluating a motion to dismiss to "consider matters of which judicial notice may be taken." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *see also Videri, Inc. v. ONAWHIM, Inc.*, No. 23-CV-2535, 2024 WL 4027980, at *7 (S.D.N.Y. Sept. 3, 2024) (matters of which judicial notice may be taken are those which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" (quoting Fed. R. Evid. 201(b))). Plaintiff has not established any basis for the assertion that the Court's method of resolving the Motion to Dismiss was a "clear error of law."

### e. Principle of Party Presentation

Plaintiff next argues that the Court improperly violated the principle of party presentation, or, alternatively, resuscitated Defendants' "waived" arguments, by ruling based on arguments not presented by the Defendants. (*See* Pl.'s Oct. 7 Mot. 10.) But the Supreme Court rejected just such an argument in 1991, in *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991). In that case, the Court held that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Id.* at 99. Plaintiff provides no basis for the contention that the Court's reliance on this principle constituted a clear legal error. Therefore, this argument, too, is unavailing.

f.  Donald Neubauer's Status as a New York City Police Officer

Plaintiff alleges that the Court wrongly rejected Plaintiff's allegation that Defendant Neubauer was a police officer/detective in the New York City area.  (*See* Pl.'s Oct. 7 Mot. 11–12.)  In its 2024 Opinion, this Court refused to accept this allegation, because it was raised for the first time in Plaintiff's Third Amended Complaint.  (*See* 2024 Op. 36–37.)  Plaintiff argues that "since Day 1," Plaintiff has alleged that Neubauer was a New York police office or detective.  (*See* Pl.'s Oct. 7 Mot. 11.)  In support of this claim, Plaintiff cites to the original Complaint.  (*See id*.)

However, Plaintiff's Complaint contains no such allegation.  (*See* Compl.)  The Second Amended Complaint calls Neubauer a "retired police officer" and provides exhibits which suggest Donald Neubauer left the police force in 2006.  (*See* Second Am. Compl. ¶¶ 732–4; *see also id*. ¶¶ 19, 695–6, Ex. 17, at 9.)  Plaintiff's arguments on this issue do not meet the high burden required for reconsideration, and therefore fail.

g.  Unaddressed Claims and Insufficient Claims

Plaintiff next alleges that the Court erred in failing to address several of the claims in the Complaint: those arising under the Gender Motivated Violence Act, the NYSHRL and NYCHRL, the Fourth Amendment, the Fifth Amendment, the Eighth Amendment, the Thirteenth Amendment, and the Fourteenth Amendment.  (*See* Pl.'s Oct. 7 Mot. 14–15.)  Plaintiff further alleges that the Court erred in its determination of the sufficiency of the pleadings with regards to Plaintiff's § 1985, § 1986, and RFRA claims.  (*See id*. at 15.)

The Court properly disposed of all of Plaintiff's constitutional claims under § 1983, because the Court found that Plaintiff had not alleged any state action.  As previously discussed, the Court did not consider additional claims raised by Plaintiff in its Opposition or its

unauthorized affidavit. (*See* 2024 Op. 9–10.) This was proper because reliance on claims raised

for the first time in Opposition filings, let alone an improperly filed affidavit, is ordinarily

impermissible, and the Court withdrew special solicitude. *See Sec. & Exch. Comm'n v. Thurlow,*

No. 21-CV-7700, 2024 WL 4068881, at *5 (S.D.N.Y. Sept. 5, 2024) (refusing to rely upon

affidavits that were not referenced in the complaint, or that were not relied upon in the

complaint); *see also DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 61 (S.D.N.Y. 2010)

(refusing to treat an affidavit as part of the pleadings in evaluating a motion to dismiss).

Finally, the Court properly adjudicated Plaintiff's § 1985, § 1986, and RFRA claims. (*See*

2024 Op. 38–39, 59–61.) In the argument for reconsideration, Plaintiff simply argues that the

claims were not conclusory. (*See* Pl.'s Oct. 7 Mot. 15.) However, Plaintiff's disagreement with

the Court's ultimate holding does not rise to level of a "clear error of law" sufficient to warrant

reconsideration. *See Byam v. New York City Dep't of Educ.*, No. 23-CV-03999, 2024 WL

4504712, at *1 (E.D.N.Y. Oct. 16, 2024) ("[A] motion for reconsideration is not a vehicle for . . .

securing a rehearing on the merit[] or otherwise taking a second bite at the apple." (quoting

*Davidson v. Scully*, 172 F. Supp. 2d 458, 464 (S.D.N.Y. 2001))).

### h.  Tort Claims

Plaintiff also alleges that the Court erred in disposing of the prima facie tort, fraud,

NIED, IIED claims, medical malpractice claims, negligent hiring and training claims, and

conspiracy claims. (*See* Pl.'s Oct. 7 Mot. 16–17.)

As for the prima facie tort claims, Plaintiff argues that the Court erred by using facts that

Plaintiff intended to only apply to the fraud claims against the prima facie tort claims. (*See* Pl.'s

Oct. 7 Mot. 15.) Though Plaintiff is correct that the Federal Rules of Civil Procedure permit

plaintiffs to plead alternative legal theories, this rule does not give plaintiffs license to plead

inconsistent facts.  *See Lewis Baeringer v. Plainview-Old Bethpage Central School Dist.*, No. 23-CV-03557, 2024 WL 3988303, at *3 (E.D.N.Y. Aug. 29, 2024) (finding that inconsistent factual allegations in the complaint could not be construed as "legal theories in the alternative"); *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 615 n.10 (S.D.N.Y. 2003) ("A complaint may not allege inconsistent facts . . . because facts are binding judicial admissions."). Furthermore, even excluding the allegation Plaintiff deems objectionable, Plaintiff's claim for prima facie tort fails because the allegation regarding disinterested malevolence is conclusory. (2024 Op. 54–55.)  Plaintiff's argument to the contrary attempts to rehash issues that have already been litigated and presents no "clear error of law."

Plaintiff's attempts to resuscitate their NIED and IIED claims also fail, insofar as they rely on allegations Plaintiff raised in submissions that the Court declined to incorporate into the complaint.  (*Compare* Pl.'s Oct. 7 Mot. 16 (alleging Plaintiff's NIED and IIED claims were based on "sexual assault" and "gender motivated violence"), *with* Third Am. Compl. (failing to mention sexual assault and gender motivated violence).)

Plaintiff's arguments regarding the fraud claims attempt to relitigate issues already decided by the Court.  (Pl.'s Oct. 7 Mot. 16.)  Plaintiff disagrees with the Court's determination that the allegations in the TAC were conclusory.  (*See id.*)  Plaintiff also rejects the Court's assessment that the TAC failed to meet the heightened pleading standard articulated by Federal Rule of Civil Procedure 9(b).  (*See id.*)  Plaintiff's conclusory disagreement with the Court's findings, without more, does not provide sufficient basis for reconsideration.  *See Byam*, 2024 WL 4504712, at *1.

Plaintiff also asserts that the negligent hiring claims were dismissed in error because the Court relied on "extrajudicially obtained facts."  (Pl.'s Oct. 7 Mot. 17.)  Plaintiff does not clarify

which facts those might be. The Court's 2024 Opinion relies entirely on the insufficiency of the allegations in the TAC in granting the Motion to Dismiss. (*See* 2024 Op. 52–3.) Therefore, Plaintiff has failed to allege a "clear error of law" meriting reconsideration on this issue.

Plaintiff's argument regarding the medical malpractice claims is similarly unavailing. (*See* Pl.'s Oct. 7 Mot. 16–17.) While it is true that in some cases, New York courts have found an implied doctor-patient relationship between two parties where there in fact was no *formal* doctor-patient relationship, that case law does not apply where, as here, a doctor simply "examine[d] an employee on behalf of an employer." *See Lee v. City of New York*, 560 N.Y.S.2d 700, 701 (1990); *accord Murphy v. Blum*, 554 N.Y.S.2d 640, 642 (1990) ("Since Dr. Blum was retained by the NBA solely for the purpose of advising it whether Murphy would be physically capable of performing his duties as a referee and not to treat or advise the plaintiff, no physician-patient relationship existed in this case."). Here, Plaintiff has failed to allege that Dr. Panos provided any medical treatment to Plaintiff. (See Third Am. Compl. ¶¶ 16, 77, 82, 95.) Rather, Plaintiff's allegations only make clear that Dr. Panos was tasked with examining Plaintiff on behalf of Plaintiff's employer. (*See, e.g.*, *id*. ¶ 16 ("Sedgwick believed Plaintiff's requests for workers comp . . . were criminal acts of 'fraud' and/or 'insurance fraud' based on medical opinions of Spyros Panos . . . .").) This is insufficient to establish the doctor-patient relationship element of a medical malpractice claim under New York law. Therefore, Plaintiff's arguments on this score fail.

<u>i.  Refusal to Treat the Complaint as Amended by Subsequent Filings</u>

Plaintiff next argues that the Court was obligated to treat Plaintiff's unauthorized affidavit as an amendment to the claims in the TAC. (*See* Pl.'s Oct. 7 Mot. 17.) However, Plaintiff only cites to cases where the pro se plaintiff was given "the benefit of the doubt"

because of their status as pro se.  (*See id*. (citing *Washington v. James*, 782 F.2d 1134, 1138–39 (2d Cir. 1986); *Rosales v. Kikendall*, 605 F. App'x 12, 14 (2d Cir. 2015)).)

Here, the Court revoked Plaintiff's special solicitude for the purposes of a motion to dismiss, because of Plaintiff's familiarity with this particular procedural setting as well as Plaintiff's general experience with litigation.  (*See* 2024 Op. 9.)  As a result, Plaintiff was not entitled to the leeway traditionally given to pro se plaintiffs in connection with improperly filed amendments.  Therefore, this claim for reconsideration fails.

### j.  Refusal to Grant Plaintiff Leave to Amend Dismissed Claims

Finally, Plaintiff argues that the Court's denial of leave to amend was improper as a matter of law.  (*See* Pl. Oct. 7 Mot. 17.)  As previously explained by the Court, it is well settled that Plaintiff is not entitled to leave to amend their complaint for a third time.  (*See* 2024 Op. 66–67.)  Plaintiff suggests that this case law only applies where the district court has already ruled on the same claim in the same posture—that is: in order to deny leave to amend a claim dismissed pursuant to Federal 12(b)(6), Plaintiff must have had the same claim denied previously pursuant to Federal Rule 12(b)(6).  (*See* Pl. Oct. 7 Mot. 18.)

As previously noted, in a motion for reconsideration, the burden is on Plaintiff to establish that the district court has made a "clear error of law."  *Adegbite*, 877 F.2d at 178.  Plaintiff cites *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825 (2d Cir. 2019), as sufficient to make this showing, but *Attestor* is distinguishable.  (*See* Pl. Oct. 7 Mot. 17.)  In *Attestor*, the plaintiffs had only amended their complaint once.  940 F.3d at 829.  Even then, the Second Circuit upheld the district court's denial of leave to amend.  *Id.* at 833 ("The district court did not abuse its discretion when it denied plaintiffs leave to amend.").  Here, Plaintiff has

15

been given the opportunity to amend the complaint twice.  (*See* 2021 Order; 2023 Op.)

Therefore, the case law Plaintiff points to is inapplicable and Plaintiff's argument fails.

## B. Sanctions

Next, the Court turns to Defendants' Motion for Sanctions.  (*See* Defs.' Mot; Defs.'

Mem. of Law in Supp. of Mot. ("Defs'. Mem.") (Dkt. No. 141); *see also* Cross-Mot.; Mem. of

Law in Supp. of Mot. ("Cross-Mot. Mem.") (Dkt. No. 144).)  Defendants ask the Court to

sanction Plaintiff in light of Plaintiff's often vitriolic and abusive submissions, and because

Plaintiff continues to fail to comply with the Court's Individual Rules.  (*See* Pl.'s Oct. 7 Mot.)

Defendants seek dismissal of Plaintiff's claims, or, in the alternative, an award of attorney's fees

and costs under 42 U.S.C. § 1927, or pursuant to the Court's inherent authority.  (*See* Defs.' Mot.

7–8.)

First, Defendants argue that Plaintiff's claim should be dismissed entirely, presumably

under Federal Rule 41(b).  (*See* Defs.' Mem. 8.)  Rule 41(b) of the Federal Rules of Civil

Procedure authorizes the district court to dismiss an action "[i]f the plaintiff fails to prosecute or

to comply with [the] rules or a court order."  A district court considering a Rule 41(b) dismissal

must weigh five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether
> plaintiff was on notice that failure to comply would result in dismissal, (3) whether
> the defendants are likely to be prejudiced by further delay in the proceedings, (4) a
> balancing of the court's interest in managing its docket with the plaintiff's interest
> in receiving a fair chance to be heard, and (5) whether the judge has adequately
> considered a sanction less drastic than dismissal.

*Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996).  No single factor is dispositive.  *Nita v. Conn.*

*Dep't of Env't. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994).

The Second Circuit has noted that "such dismissals are 'the harshest of sanctions' and []

insist[s] that dismissal 'be proceeded by particular procedural prerequisites,' including 'notice of

the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Baptiste v. Sommers*, 768 F.3d 212, 216–17 (2d Cir. 2014) (quoting *Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (collecting cases)).  The Second Circuit has instructed that dismissal under Rule 41(b) "should be used only in extreme situations."  *Id.* (quotation marks omitted).  Moreover, "district courts should be especially hesitant to dismiss for procedural deficiencies where, as here, the failure is by a pro se litigant."  *Lucas*, 84 F.3d at 535.

While it is true that Plaintiff has, once again, flouted the Court's orders, the Court nonetheless views dismissal as too extreme a remedy at this stage, notwithstanding that the Court has given notice that Plaintiff faces dismissal of the case due to noncompliance with the Court's Individual Practices.  (*See* 2024 Op. 8–9; 2023 Op. 7.)  However, Plaintiff is on notice that any future failure to adhere to the Court's Individual Rules—even rules about margins, font, and double-spacing—may subject Plaintiff's claims to dismissal with prejudice.

Second, Defendants urge the Court to impose attorney's fees and costs upon Plaintiff. (*See* Defs.' Mem. 9.)  The Second Circuit has ruled that § 1927 does not apply to pro se litigants. *See Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992) (finding that § 1927 cannot be applied to non-lawyer pro se litigants because they do not fall within the meaning of "admitted" in the statute).  However, the Court does have inherent authority to "impose sanctions on 'litigants and lawyers who show themselves to be serial abusers of the judicial system.'" *Keitel v. D'Agostino*, No. 21-CV-8537, 2023 WL 3560553, at *3 (S.D.N.Y. May 19, 2023) (quoting *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 280 (2d Cir. 2021)).  The Second Circuit has further held that district courts may issue sanctions to parties (including pro se parties) where they are acting in "bad faith, vexatiously, wantonly, or for oppressive reasons."  *Sassower*, 973 F.2d at 80–81.

Courts in the Second Circuit have been hesitant to impose attorney's fees as sanctions upon litigants proceeding in forma pauperis. *See Benitez v. King*, 298 F. Supp. 3d 530, 542 (W.D.N.Y. 2018) (collecting cases). Nevertheless, other courts have found that ordering a pro se litigant to pay attorney's fees is appropriate where the litigant has been put on notice of the possibility of such a sanction. *See Papadimitriou v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 22-CV-2066, 2023 WL 6385769, at *5 (E.D.N.Y. Sept. 29, 2023) (noting that "the court must adequately warn the pro se litigant before imposing [attorney's fees]"); *Golub v. Univ. of Chicago*, No. CV-87-2891, 1992 WL 333641, at *4 (E.D.N.Y. Oct. 26, 1992) (finding award of attorney's fees appropriate against a pro se litigant where litigant had "been adequately warned of the consequences which may result from this behavior"); *see also Sassower*, 973 F.2d at 80–81 (finding that an award of attorney's fees as sanctions against a pro se plaintiff was appropriate where the plaintiff had repeatedly utilized "entirely vexatious and oppressive tactics").

Here, as noted, Plaintiff is unquestionably a serial litigant. *See Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 22-CV-5868, 2023 WL 1869040, at *2 (S.D.N.Y. Feb. 6, 2023) (collecting cases in which Plaintiff has been a litigant). Furthermore, Plaintiff's conduct in this and other cases across the country may be fairly construed as "vexatious" and in "bad faith." Plaintiff has repeatedly filed frivolous claims and motions whose only possible explanation could be harassment and delay of proceedings. (*See, e.g.*, Pl.'s Mot. For Reconsideration of Relatedness and For Disqualification of Judge (Feb. 9, 2024) (Dkt. No. 7); Pl.'s Mot. For Reconsideration (Jul. 26, 2021) (Dkt. No. 29); Pl.'s Mot. For Stay of Proceedings (Oct. 28, 2021) (Dkt. No. 72); Pl.'s Mot. For Reconsideration (Sept. 30, 2022) (Dkt. No. 90); Pl.'s Mot. for Recusal and Disqualification (Nov. 6, 2022) (Dkt. No. 97); Pl.'s Mem. In Opp. (Jan. 30, 2024) (Dkt. No. 118).) Furthermore, many of Plaintiff's filings have been nearly incomprehensible,

(*see, e.g.,* 2022 Op. (Dkt. No. 89)), and Plaintiff has refused to abide by the Court's Individual Rules, which are designed to ensure fairness and protect judicial resources, (*see, e.g.*, *id.*; Second Am. Compl.; Pl.'s Mem. In Opp.)

This behavior strongly suggests that Plaintiff is using the court system as a means of harassing Defendants and the judiciary, meeting the requirements for vexatiousness and bad faith required to impose sanctions.[1] *See CareMatrix Corp. v. Kaplan*, No. 05-CV-53173, 2012 WL 13102106, at *2 (E.D.N.Y. July 3, 2012) (noting that "courts have resorted to strict sanctions where disregard for local or individual rules leads to vexatious litigation practices"); *Campbell v. New York State Police*, No. 23-CV-1337, 2024 WL 1702010, at *4, n.4 (N.D.N.Y. Apr. 19, 2024), *report and recommendation adopted*, No. 23-CV-01337, 2024 WL 3063674 (N.D.N.Y. June 20, 2024) (suggesting the plaintiff's "prolix, unintelligible, speculative complaints" were "vexatious" (internal alterations omitted).)

Moreover, Plaintiff has been warned that failure to abide by the Court's Individual Rules could result in sanctions, including the dismissal of all claims entirely as well as the imposition of attorney's fees. (*See* 2024 Op. 8–9.) Despite these warnings, Plaintiff continues to flout the Court's Individual Rules. In the most recent submission, Plaintiff files a single-spaced document without appropriately sized margins or correct font size. (*See generally* Pl.'s Oct. 7 Mot.; Pl.'s Oct. 17 Mot.) Plaintiff's consistent disregard of the parameters imposed by this Court has led to needless expenditure of resources by both the judiciary and Defendants.

---

[1] Defendants also note that Plaintiff has frequently used caustic and insulting language. (*See* Defs' Mem. 8.) Such language is unacceptable when directed at other parties, but the Court is unconcerned by the invective Plaintiff has aimed in its direction. For more, see discussion below.

The Court nonetheless finds that attorney's fees are not an appropriate sanction at this stage. However, this order *is* Plaintiff's final warning. A continued failure to comply with the Court's rules will result in monetary sanctions and/or dismissal of the matter in its entirety. *See Komatsu v. City of New York*, No. 20-CV-10942, 2022 WL 1446545, at *3–5 (S.D.N.Y. Apr. 21, 2022), *report and recommendation adopted*, No. 20-CV-10942, 2022 WL 2188170 (S.D.N.Y. June 17, 2022), *appeal dismissed* (Aug. 4, 2022) (providing multiple warnings to vexatious pro se plaintiff before dismissing case with prejudice); *Golub*, 1992 WL 333641, at *3–4 (sanctioning Plaintiff after "warn[ing] of the consequences which may result from [his] behavior").

## C. Motion to Strike

Defendants also request that the Court strike the portions of Plaintiff's latest submissions which they characterize as "scandalous, scurrilous content" under Federal Rule 12(f). (*See* Defs.' Mem. 9.) Federal Rule 12(f) permits courts to "strike from a pleading . . . scandalous matter." Fed. R. Civ. P. 12(f). A "pleading" includes: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to answer." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09-CV-2669, 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015) (citing Fed. R. Civ. P. 7(a)). Defendants allege that Plaintiff's repeated use of abusive language qualifies as such scandalous language under FRCP 12(f). (*See* Defs.' Mem. 9.)

"Federal courts have discretion in deciding whether to grant motions to strike." *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. 2019). However, motions to strike are disfavored. *Tacon v. Cromwell*, No. 23-CV-8100, 2024 WL 4275625, at

*17 n.21 (S.D.N.Y. Sept. 24, 2024) (quoting *Sweigert v. Goodman*, No. 18-CV-8653, 2021 WL 603069, at *1 (S.D.N.Y. Feb. 16, 2021)); *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 559 (S.D.N.Y. 2023) (same).  Nevertheless, where the allegations at issue "have no real bearing on the subject matter," they may nonetheless be stricken.  *Celestin v. Martelly*, No. 18-CV-7340, 2024 WL 4355512, at *4 (E.D.N.Y. Sept. 30, 2024) (quoting *Shahzad v. Meyers*, No. 95-CV-6196, 1997 WL 47817, at *13 (S.D.N.Y. Feb. 6, 1997)).  Furthermore, "the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the courts files and protect the person who is the subject of the allegations." *S.E.C. v. Treadway*, No. 11-CV-1534, 2011 WL 2623469, at *1 (S.D.N.Y. June 29, 2011) (quoting 5C Wright, Miller, Marcus, Fed. Prac. Proc. Civ. 1382 (3d ed.)); *see also Bartlett v. Societe Generale De Banque Au Liban SAL*, No. 19-CV-7, 2021 WL 8155950, at *2 (E.D.N.Y. Aug. 5, 2021) (finding that "[t]he allegations against [third-party] are scandalous, and so the principle disfavoring motions to strike does not apply" (internal quotation marks omitted)).

Courts have defined "scandalous" material as that which "impugn[s] the character of [a party]," *Bartlett*, 2021 WL 8155950, at *1, or "reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court," *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (quoting *Cabble v. Rollieson*, No. 04-CV-9413, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006)); *see also Brown v. Maxwell*, 929 F.3d 41, 51 n.42 (2d Cir. 2019).

"Although the Rule [FRCP 12(f)] does not expressly authorize the striking of documents other than pleadings, a district court has 'inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances.'"  *Penzo v. Consol.*

*Edison Co. of New York, Inc.*, No. 19-CV-7478, 2024 WL 3824072, at *16 (S.D.N.Y. Aug. 15, 2024) (quoting *Sierra v. United States*, No. 97-CV-9329, 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998)).  At least one court has found that the use of inappropriate language in correspondence and court filings justifies granting a motion to strike.  *See, e.g.*, *Adams v. Taylor*, No. 21-CV-6056, 2024 WL 1054226, at *11–12 (W.D.N.Y. Jan. 26, 2024), *report and recommendation adopted*, 717 F. Supp. 3d 300 (W.D.N.Y. 2024).

     In this case, much of the invective Plaintiff has used has been aimed at the Court itself.  (*See, e.g.*, Pl.'s Oct. 7 Mot. 12; Mot. for Reconsideration (Oct. 9, 2024) 3, 6 (Dkt. No. 133); Pl.'s Mot. 2, 4.)  The Court is less concerned with this language than it is with any language Plaintiff has directed toward Defendants.  The Court finds Plaintiff's abusive language against Defendants, particularly in Plaintiff's latest submission, disturbing and concerning.  (*See* Resp. 2, 4, 12.)  However, the Court finds that this language has not risen to the level required to exercise its inherent authority to strike. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (noting that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion").

     Nevertheless, the Court warns Plaintiff that continued use of harmful language will result in sanctions, up to and including striking Plaintiff's submissions and dismissal of Plaintiff's claims in their entirety.  *See Koehl v. Bernstein*, 740 F.3d 860, 863 (2d Cir. 2014) (affirming district court's decision to dismiss pro se plaintiff's action with prejudice for repeated "abuse[s] and insult[s]"); *Muench Photography, Inc.*, 2015 WL 4757601, at *3 (describing "inherent authority" as including the court's ability to strike any filing which it determines to be abusive or otherwise improper under the circumstances) (internal citations and quotations omitted); *see also Pimentel v. Delta Air Lines, Inc.*, 818 F. App'x 100, 102 (2d Cir. 2020) *(summary order)* (noting

22

"dismissals with prejudice" are an appropriate sanction "where pro se litigants repeatedly used abusive language toward judges").

III.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Reconsideration is denied in full. Defendants' Motions for Sanctions and to Strike are also denied in full. The Clerk of Court is respectfully directed to terminate the pending Motions (Dkt. Nos. 123, 134, 140, and 143).


SO ORDERED.

Dated:    January 6, 2025
          White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        United States District Judge